ALVAREZ, P.J.A.D.
*574 For the reasons that follow, we affirm Judge Mary Jacobson's thorough and well-reasoned August 7, 2015 decision awarding counsel fees to plaintiff Empower Our Neighborhoods (EON), an *575 advocacy group, in this election matter. She apportioned the $105,063.80 award as follows: *281 fifty percent or $52,531.90 payable by defendant State of New Jersey; twenty percent or $21,012.76 payable by the City of New Brunswick on behalf of defendant City Clerk Daniel Torrisi; twenty percent or $21,012.76 payable by Middlesex County on behalf of defendant County Clerk Elaine Flynn; and ten percent or $10,506.38 payable by the New Brunswick Board of Education on behalf of its secretary, defendant Richard Jannarone.[1] All defendants appeal.
As Judge Jacobson explained, this litigation "buil[t] on" the October 17, 2007 agreement reached with the State in another consequential election case, Green Party of New Jersey; New Jersey Conservative Party; and New Jersey Libertarian Party, Inc. v. State of New Jersey, Division of Elections and Anne Milgram, Attorney General of New Jersey, Docket No. C-125-06. The consent order in that case states: "the provisions in N.J.S.A. 19:13-5 and 19:13-7 which, when read together, require a person certifying the signatures on a direct nominating petition to be a legally qualified voter residing within the district in which the nominee is seeking office [are] hereby declared to be void and unenforceable."
The consent order committed the State to make available, through the Division of Elections, revised direct nomination petition forms by December 31, 2007.[2] The order cited to Buckley v. American Constitutional Law Foundation, 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) as the binding precedent requiring modification of the statutory residency requirement.
EON, by way of complaint and amended complaint, sought to eliminate the district residency, age, and voter registration requirements in an expanded universe of election activities: for recall *576 petitions, petitions nominating independent candidates in general elections, the selection of candidates from local parties, and Board of Education members. On March 31, 2014, Judge Jacobson decided the matter on motions and cross-motions for summary judgment by all the parties, including the Democratic and Republican State Committees who "participated in the case as defendants pursuant to court order." She partially granted EON's motion by eliminating the in-district residency requirement, finding it unconstitutional.
The judge denied EON's request that petition circulators need not be voter-eligible-circulators continued to be required to be over eighteen, citizens, and New Jersey residents. The judge also denied EON's request that circulators in partisan primary elections not be required to be registered voters of the relevant party.[3]
EON's success in this litigation, the judge observed, "changed the landscape of election law in New Jersey," as "all 5.88 million registered voters in New Jersey now ha[d] expanded petition rights."
[T]he available petition circulator base is [now] about [eleven] times higher in Bergen County, the largest jurisdiction in New Jersey, .... In New Brunswick, ... the available circulator base has been expanded by 248 times with regard to Independent candidates, by 208 times with regard to Democratic candidates, *282 and by 1115 times with regard to Republican candidates.
At the close of the case, EON was awarded counsel fees pursuant to 42 U.S.C. § 1983 and § 1988, and the New Jersey Civil Rights Act (the Act), N.J.S.A. 10:6-2(f). After the defendants filed the appeal, the State sought a brief remand to the trial court, alleging it had discovered a form letter circulated to local governments disclosing the Green Party settlement. The State had not previously been able to produce any proof of efforts to communicate the terms of the Green Party order to the affected entities.
On remand, Judge Jacobson was unconvinced the letter satisfied the State's Green Party obligations and constitutional requirements.
*577 She found that since as late as 2011, four years after the Green Party consent order was signed, the State continued to promulgate model forms inconsistent with Buckley, the State was not entitled to modification of the award. Even in 2012, the State's website had posted a recall petition form that was "inconsistent with Buckley." The judge also found that the State's letter did not adequately explain the unconstitutionality of local district residency requirements. Despite the communication, "the State did not ensure that all the model forms it promulgated and continued to promulgate after the Green Party consent order were completely consistent with the Buckley decision."
The State now asserts on appeal:
POINT I
STATE DEFENDANTS ARE NOT LIABLE FOR ATTORNEY'S FEES OR COSTS AWARDED TO EON BECAUSE EON DID NOT PREVAIL ON ITS CLAIMS AGAINST STATE DEFENDANTS AND STATE DEFENDANTS WERE NOT RESPONSIBLE FOR THE FEES INCURRED BY EON AS A RESULT OF THE MUNICIPAL DEFENDANTS' RESIST[A]NCE TO THEIR CLAIMS
A. Prevailing Party Is Entitled Only to Reasonable Attorney's Fees.
B. The Lodestar Amount Should Be Reduced to Reflect EON's Lack of Success.
C. State Defendants Should Not Be Responsible for Any Fees and Costs Incurred After the Complaint Was Filed as That Complaint Put the Municipal Defendants on Notice of the 2007 Green Party Consent Order.
D. The State Defendants[ ] Should Not Be Held Accountable for the Litigation Conduct of the Municipal Defendants.
E. The Municipal Defendants' Conduct Prolonging the Litigation Requires an Increase in The Amount of Fees and Costs Allocated to Them.
POINT II
THE COURT SHOULD SUBSTANTIALLY REDUCE EON'S APPLICATION FOR ATTORNEY'S FEES AND COSTS BECAUSE IT DID NOT PREVAIL ON ANY MAJOR ISSUE AFTER THE ISSUANCE OF THE COURT'S OCTOBER 3, 2012 PRELIMINARY INJUNCTION
Flynn contends:
POINT I
THE TRIAL COURT ERRED IN IMPOSING MONELL [4] LIABILITY ON DEFENDANT FLYNN, IN HER OFFICIAL CAPACITY, AND ON THE
*578 COUNTY, BECAUSE THE DISTRICT RESIDENCY REQUIREMENT LANGUAGE IN THE SUBJECT STATE STATUTES AND
*283 RELATED STATE PETITION CIRCULATOR FORMS WERE NOT A MUNICIPAL POLICY OF FLYNN OR OF THE COUNTY WITHIN THE MEANING OF MONELL.
POINT II
ASSUMING ARGUENDO THE JUDGMENT AGAINST FLYNN IS NOT REVERSED, IN THE CIRCUMSTANCES OF THIS CASE, THE ALLOCATION OF REASONABLE ATTORNEYS' FEES AND COSTS IS UNREASONABLE, ARBITRARY, AND AN ABUSE OF DISCRETION.
Torrisi argues:
POINT I
BECAUSE EON'S HARM WAS CAUSED BY AN UNCONSTITUTIONAL STATE STATUTE AND NOT A MUNICIPAL POLICY OF CUSTOM, THE TRIAL COURT ERRED IN HOLDING THE CITY CONSTITUTIONALLY LIABLE FOR COUNSEL FEES.
A. A Local Government Can Only Be Found Constitutionally Liable If It Affirmatively Adopts a Policy Or Custom Which Is the Moving Force Behind the Plaintiff's Constitutional Deprivation.
1. Monell Applies to EON's claims brought under the New Jersey Constitution and the NJCRA.
2. A Municipal Government's Enforcement Of A Nondiscretionary State Statute Later Deemed Unconstitutional Does [Not] Give Rise To Municipal Government Liability Under Monell.
B. Because EON's Constitutional Harm Arises From State Statutes And Not A Municipal Policy, The Trial Court Erred In Finding The City Constitutionally Liable Under Monell.
C. Since The City Is Not Constitutionally Liable Under Monell, EON Is Not Entitled To Counsel Fees Against The City.
POINT II
ALTERNATIVELY, EVEN IF THE CITY IS CONSTITUTIONALLY LIABLE FOR COUNSEL FEES UNDER MONELL, THE TRIAL COURT'S ALLOCATION OF COUNSEL FEES WAS ARBITRARY AND UNREASONABLE.
Jannarone asserts:
I. THE TRIAL COURT ERRED IN AWARDING PERCENTAGE PAYMENT OF PLAINTIFF'S COUNSEL FEES BY DEFENDANT, RICHARD JANNARONE, INDIVIDUALLY AND AS BOARD SECRETARY OF THE NEW BRUNSWICK BOARD OF EDUCATION, HAVING FOUND THAT STATUTORY PROVISIONS REQUIRING PETITION CIRCULATORS TO RESIDE IN DISTRICT OF THE OFFICE FOR WHICH THEY SEEK TO CIRCULATE PETITIONS TO BE UNCONSTITUTIONAL.
II. THE DECISION OF THE TRIAL COURT TO AWARD TEN (10%) PERCENT PAYMENT OF PLAINTIFF'S COUNSEL FEE BY DEFENDANT, RICHARD JANNARONE, INDIVIDUALLY AND AS BOARD SECRETARY
*579 OF THE NEW BRUNSWICK BOARD OF EDUCATION, WAS ARBITRARY, CAPRICIOUS AND SHOULD BE REVERSED.
I.
A prevailing party can recover counsel fees if expressly allowed by statute, court rule, or contract. The extent of such awards rests within the sound discretion of the trial judge, reviewable under an abuse of discretion standard.
*284 Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443-44, 771 A.2d 1194 (2001). "[F]ee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Id. at 444, 771 A.2d 1194 (quoting Rendine v. Pantzer, 141 N.J. 292, 317, 661 A.2d 1202 (1995) ).
A prevailing party in § 1983 litigation may be allowed "a reasonable attorney's fee." 42 U.S.C. § 1988(b). Indeed, § 1988, titled "The Civil Rights Attorney's Fees Award Act of 1976," is designed to ensure "effective access to the judicial process" for persons with civil rights grievances. H.R. REP. NO. 94-1558, at 1 (1976). Although the decision to award fees is described as discretionary, "it was clearly the intent of Congress in passing section 1988 that fees be awarded as a matter of course." Gregg v. Twp. Comm. of Twp. of Hazlet, 232 N.J. Super. 34, 37, 556 A.2d 348 (App. Div. 1989). Section 1988 ensures that those who may not be able to purchase legal services on the open market are nonetheless represented in order to vindicate their civil rights. Tumpson v. Farina, 218 N.J. 450, 479, 95 A.3d 210 (2014) ; New Jerseyans for a Death Penalty Moratorium v. Dep't of Corr., 185 N.J. 137, 153, 883 A.2d 329 (2005).
Thus, a "prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citation omitted). "[A] party can be considered 'prevailing' for [these] purposes ... even though the disposition of the case does not include a final judgment entered in plaintiff's favor, provided plaintiff has won substantially the relief *580 originally sought in her [or his] complaint." Singer v. State, 95 N.J. 487, 495, 472 A.2d 138 (1984) (second alteration in original) (citation omitted).
The Act, the State's counterpart to the federal statute, also contains a fee-shifting provision, N.J.S.A. 10:6-2(f). It states: "In addition to any damages, civil penalty, injunction or other appropriate relief in an action ... the court may award the prevailing party reasonable attorney's fees and costs." Plaintiffs can recover counsel fees under our fee-shifting statute even "if the lawsuit 'achieves the desired result because [it] brought about a voluntary change in the defendant's conduct.' " D. Russo, Inc. v. Twp. of Union, 417 N.J. Super. 384, 389, 9 A.3d 1089 (App. Div. 2010) (alteration in original) (quoting Mason v. City of Hoboken, 196 N.J. 51, 72, 951 A.2d 1017 (2008) ).
II.
We first address the issue of whether the imposition of liability for fees on the municipal defendants was proper. In Monell, the United States Supreme Court expanded the scope of 42 U.S.C. § 1983 to include municipalities and local governments. 436 U.S. at 690, 98 S.Ct. 2018. Liability is limited to instances in which a municipal official is executing a "government's policy or custom." Id. at 694, 98 S.Ct. 2018. Liability is not imposed on the municipality merely because it employed a tortfeasor, rather, liability requires official policies and actions that amount to a constitutional tort. Id. at 691, 98 S.Ct. 2018.
In order to assess liability under 42 U.S.C. § 1983, two factors are considered: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." Collins v. City of Harker Heights, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). In this case, it is undisputed that the residency restrictions enforced by the municipalities post- Buckley caused a constitutional tort.
*285 *581 The non-State defendants contend that the trial court erred in imposing Monell liability because Middlesex County, New Brunswick, and the Board of Education were merely enforcing state, not municipal, policy by the use of outdated circulator forms. Flynn also asserts that in order for the action of a municipal official to come within the scope of Monell liability, there must be evidence that the municipal officer, or municipality, consciously elected to enforce an unconstitutional statute, rather than merely following a statute that it was obligated to enforce. Torrisi and Jannarone echo the argument.
Judge Jacobson found the non-State defendants liable because "the state election statutes provide that clerks are the election officials responsible for certifying the results of petitions-not the State" and, therefore, defendants were "not without some fault." She relied on the analysis found in decisions from the First, Eighth, and Ninth Federal Circuits, holding that "enforcement authority over unconstitutional statutes is a sufficient basis to assess liability to officials responsible for enforcing laws they did not themselves create." The non-State defendants cite contrary opinions from the Second, Fourth, Fifth, Seventh, and Tenth Circuits. Those cases, however, are factually distinguishable.
In contrast with the cases the non-State defendants cite, they knowingly exercised enforcement authority over laws that, after Buckley, were unconstitutional. Judge Jacobson commented:
the municipal defendants [ ] participated in this litigation, choosing to defend the constitutionality of many aspects of the election statutes at issue. Consequently, ... Torrisi, Flynn, and Jannarone were [not] mere pawns of the State, enforcing a statutory scheme without discretion. Furthermore, even if ... the State's actions contributed to a greater degree to the constitutional problem leading to this litigation, that [ ] does not excuse the municipal defendants from liability-it is simply an argument in favor of diminishing the amount of their liability for counsel fees compared to the State ....
The knowing enforcement of unconstitutional provisions in the law is a proper basis for liability. Morillo v. Torres, 222 N.J. 104, 118, 117 A.3d 1206 (2015) (citing Connor v. Powell, 162 N.J. 397, 409, 744 A.2d 1158 (2000) ). It is in keeping with the notion that access to reasonable awards of counsel fees makes it more *582 likely that persons with civil rights grievances will rightly turn to the courts for redress. Hensley, 461 U.S. at 429, 103 S.Ct. 1933 ; Laudert v. Richland Cty. Sheriff's Dep't, 301 Mont. 114, 7 P.3d 386, 399 (2000) ("[G]enerally, there is agreement that without an attorney's fee award for successful litigants, meritorious civil rights litigation often would not be brought." (citation omitted) ).
To be precise, municipal clerks determine if a recall petition complies with the statutory requirements. See N.J.S.A. 19:27A-11. Petitions in a general election are valid only if found by the clerk to conform to the statutory scheme. See N.J.S.A. 19:13-10. Municipal clerks are also responsible in primary elections to certify names and addresses, political party, and slogans to the county clerks, who in turn convey the information to the Election Law Enforcement Commission (ELEC).See N.J.S.A. 19:23-14. In other words, municipal clerks are responsible for more than mere passive collection and transmission of petitions-they actually exercise independent judgment in scrutinizing petitions submitted to them in order to assess compliance with the law as understood by the municipalities. This is also *286 the case for Board of Education clerks.[5] Jannarone facilitated the use of the nominating petition that was found to be unconstitutional pursuant to Green Party.
Thus, the harm caused by the enforcement of invalid State requirements imposed upon petition circulators is one for which the non-State defendants were responsible. The local governments certified the results, and their employees were charged with carrying out those policies, regardless of who the individuals may have been. Hence the non-State defendants cannot escape Monell liability. Although the non-State defendants are less culpable than the State, that does not permit them to escape responsibility for their fair share of counsel fees.
*583 We are not bound by a trial court's evaluation of the legal implications of facts where credibility is not an issue. Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619, 159 A.3d 412 (2017). But in this case, our de novo review leads us to conclude Judge Jacobson's imposition of Monell liability was proper.
III.
The non-State defendants also contend the judge was arbitrary and unreasonable in her apportionment of counsel fees, and that the State should have been responsible for more than half. In addition, Jannarone argues that ten percent was too great a percentage to be imposed upon the Board of Education given that it was added to the litigation late in the proceedings. There is no doubt that trial courts have "wide discretion on how to divide liability." Swan v. Daniels, 917 F.Supp. 292, 301 (D. Del. 1995).
Given the absence of New Jersey authority on the subject, the judge followed federal precedent. There are two approaches to this issue in the federal courts. Fees can be divided according to the relative culpability of the defendants, or based on the amount of time necessary to litigate as to each. See, e.g., Council for Periodical Distribs. Ass'ns v. Evans, 827 F.2d 1483, 1487-88 (11th Cir. 1987) ; S.E. Legal Defense Grp. v. Adams, 657 F.2d 1118, 1125-26 (9th Cir. 1981). Depending on the circumstances of the individual case, a combination of these methods can be appropriate. See Council, 827 F.2d at 1488. That is the hybrid method employed by the judge here, ultimately guided by the need to apportion the fees in an equitable manner.
The judge focused on the nature of the injury and the role each defendant played in its infliction. If claims are centered on common issues but are divisible, the fees should be apportioned to ensure no defendant is liable for more than actually incurred in proceeding against him. Jones v. Espy, 10 F.3d 690, 691 (9th Cir. 1993). It is reasonable, as the trial court observed, to assess fees as between the "active instigator of a wrong and a more passive *584 codefendant who had a more peripheral or ministerial role." Herbst v. Ryan, 90 F.3d 1300, 1305 (7th Cir. 1996).
Because the State entered into the Green Party consent order, and then failed to correct the petition forms circulated to the municipalities, it bore the principal burden in light of equitable principles for payment of EON's counsel fees. However, Middlesex County and New Brunswick were also at fault, since "each distributed petitions containing unconstitutional language." The Board of Education was added to the litigation in the second amended complaint, which meant that the time EON
*287 spent litigating against it was far less than the time invested in pursuing claims against Middlesex County or New Brunswick.
We see nothing arbitrary or capricious about the allocation here. It combined the level of responsibility of each entity, as well as the time invested in the case, reaching an equitable outcome. The apportionment of counsel fees is never a precise calculation, never the result of a "universal" method. Herbst, 90 F.3d at 1304. But it was not an abuse of discretion. See Packard-Bamberger, 167 N.J. at 443-44, 771 A.2d 1194. Finding no abuse of discretion, that aspect of the order is also affirmed.
IV.
The State contends that it should not be responsible for counsel fees since EON did not prevail on all its claims. The State also contends that since the non-State defendants were on notice of the Green Party consent order, they alone are at fault. Additionally, the State asserts it should not be held responsible for any portion of the litigation costs attributable to the other governmental agencies' "litigation conduct."
"[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley, 461 U.S. at 433, 103 S.Ct. 1933 (citation omitted) (quoting *585 Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978) ). A plaintiff must "receive[ ] a judgment on the merits or obtain[ ] a court-ordered consent decree[ ]" in order to be deemed a "prevailing party" for purposes of the fee-shifting provision contained in 42 U.S.C. § 1988. Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).
Clearly, EON did not succeed on all its causes of action. Judge Jacobson denied EON's request to eliminate the in-state residency requirement, and the voter eligibility requirement, including age, citizenship status, and freedom from any other prohibition. However, EON obtained a preliminary injunction declaring the district residency requirements of N.J.S.A. 19:13-7, N.J.S.A. 19:60-7, N.J.S.A. 19:27A-8(h), and N.J.S.A. 19-27A-9(a) were unconstitutional under both the State and United States Constitutions. Just because EON failed at prevailing on all of its claims does not diminish the significance of its success on most. See Hensley, 461 U.S. at 435-39, 103 S.Ct. 1933. Accordingly, the trial court did not abuse its discretion when it found that EON was a "prevailing party" against the State defendants for the purpose of awarding counsel fees. As Judge Jacobson put it, the decision expanded the petition rights of 5.88 million registered voters in New Jersey. Nonetheless, she reduced fees in light of EON's failure to prevail on each and every issue. The court also took into account the time spent in pursuing the issues against the individual parties.
EON is a prevailing party in light of the success it enjoyed in this suit. Kaye v. Rosefielde, 432 N.J. Super. 421, 486, 75 A.3d 1168 (App. Div. 2013) (quoting R.M. v. Supreme Court of N.J., 190 N.J. 1, 9-10, 918 A.2d 7 (2007) ), rev'd in part, 223 N.J. 218, 121 A.3d 862 (2015). The award against the State was not an abuse of discretion.
V.
Because the non-State defendants proceeded in the litigation despite being on notice of the unconstitutionality of the petition forms at issue, the State argues that it should not be held *586 liable for attorney's fees. The municipalities alone should be responsible for legal fees. *288 To the contrary, the State's failure to disseminate properly amended forms after the Green Party consent order was a very substantial constitutional harm that justifies the imposition of liability for half the legal fees. But for the State's failure to comply with its Green Party obligations, the litigation would theoretically have been unnecessary.
The State now argues it should not be held responsible for the non-State defendants' continued litigation of the issues. We repeat: but for the State's failure to follow through on its commitment, no litigation would have been necessary.
VI.
Finally, the State objects to the amount awarded and the trial court's method of calculation. This argument too lacks merit. The court exhaustively examined the fee application, citing to the law requiring this close examination in order to assess reasonable attorney's fees.
First the judge set the lodestar, the "number of hours reasonably expended multiplied by a reasonable hourly rate." Rendine, 141 N.J. at 335, 661 A.2d 1202 ; R. 4:42-9(b); R.P.C. 1.5(a). She adjusted the hourly rate downward, based on the norm in Mercer County. She observed that the litigation required familiarity with "somewhat archaic aspects of New Jersey election law, complex areas of constitutional law, and review of the large body of federal and state law." The judge also took into account the fact that EON did not entirely succeed. But, the significant overall success achieved justified EON being awarded a substantial portion of the amount requested. The judge deducted from the lodestar hours the time spent by counsel in unsuccessfully litigating the second preliminary injunction request.
When determining the appropriate amount of a counsel fee award, the court should award fees "to the extent that the *587 litigant was successful." Washington v. Phila. Cty. Court of Common Pleas, 89 F.3d 1031, 1042 (3d Cir. 1996). In pinpointing the degree of success, the court should focus on the "overall relief obtained," and if "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." Hensley, 461 U.S. at 434, 103 S.Ct. 1933. Once that value judgment is made, the court may decide not to reduce the award to account for limited success. Put another way, it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested," as "a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." Id. at 435, 103 S.Ct. 1933 n.11.
However, a reduction is appropriate "if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Id. at 440, 103 S.Ct. 1933. If the court determines that an adjustment of the award is required to account for partial success, the court has discretion to exclude the number of hours spent litigating unsuccessful claims, to reduce the entire award, to account for limited success, or to combine both methods. See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) (excluding the number of hours spent litigating claims on which the party did not succeed); Washington, 89 F.3d at 1042 (reducing the overall award to account for limited success); Blakey v. Continental Airlines, Inc., 2 F.Supp.2d 598, 605-07 (D.N.J. 1998) (reducing the lodestar hours and generally reducing the lodestar to reflect lack of success). These steps were precisely those taken by the court.
The judge also granted EON $9579.37 in costs. She deducted the costs *289 attributable to the application for the unsuccessful second preliminary injunction, a total of $2649.32, awarding only $6930.05. Included in that figure were amounts for online research, which alone stood at $4246.43. The judge noted that such costs have been reimbursed in the federal system. See *588 Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 98 (2d Cir. 2004) (quoting Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 975 (D.C. Cir. 2004) ) (distinguishing costs awarded under fee-shifting statutes from costs awarded as sanctions).
Pursuit of this matter required extensive research. Use of online research systems no doubt reduced the amount of time for the work to be accomplished, benefitting both EON in the struggle to vindicate constitutional rights as well as costs potentially payable by defendants. In our view, those expenses were properly included as well. Litton Industries, Inc. v. IMO Industries, Inc., 200 N.J. 372, 405-07, 982 A.2d 420 (2009).
Affirmed.

We refer to Torrisi, Flynn, and Jannarone collectively as the non-State defendants.

The non-State defendants denied knowledge of the consent order or of being notified of the consent order.

On December 26, 2014, the Legislature amended N.J.S.A. 19:13-7 to require petition circulators to only be voter-eligible.

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The Board of Education became an elected board in 2011. The Board Secretary is specifically responsible for conducting annual board elections, including the issuance of voter petitions.