**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0992-16T4

PARSIPPANY-TROY HILLS
EDUCATION ASSOCIATION,

    Plaintiff-Appellant,

v.

PARSIPPANY-TROY HILLS
BOARD OF EDUCATION,

    Defendant-Respondent.

_____

Argued May 3, 2018 — Decided July 23, 2018

Before Judges Haas and Rothstadt.

On appeal from Superior Court of New Jersey,
Chancery Division, General Equity, Morris
County, Docket No. C-000010-16.

William P. Hannan argued the cause for
appellant (Oxfeld Cohen, PC, attorneys;
Sanford R. Oxfeld and William P. Hannan, of
counsel and on the brief).

Katherine A. Gilfillan argued the cause for
respondent (Schenck, Price, Smith & King, LLP,
attorneys; Katherine A. Gilfillan, Sandra
Calvert Nathans and Paul H. Green, on the
brief).

PER CURIAM

This appeal arises from events that transpired during the labor dispute that preceded plaintiff Parsippany-Troy Hills, Education Association's, and defendant Parsippany-Troy Hills Board of Education's entering into a collective negotiations agreement in 2016. As part of its campaign to compel defendant to enter into a contract, plaintiff directed its members to post hundreds of signs on classroom windows and doors that displayed plaintiff's name and, above it, simply stated "I AM PROUD TO BE A TEACHER[.]" After defendant directed plaintiff to remove the signs because they were "intended and/or designed to promote, . . . a position(s) on labor relations issues" in violation of defendant's employment policy, plaintiff filed suit for declaratory judgment, damages and counsel fees, alleging that its First Amendment and common law rights were violated.

Following a one-day bench trial, Judge Stephan C. Hansbury found in favor of defendant after concluding that, given the context of the parties' labor negotiations, and the large number of signs posted, defendant's directive that the signs be removed did not violate plaintiff's rights. On appeal, plaintiff does not challenge defendant's policy but, rather, argues that the judge erred in basing his decision on the context of the labor relations between the parties, rather than the content of the speech itself.

It also contends that defendant's enforcement of its policy created a prior restraint on speech.

Having considered plaintiff's arguments in light of the record and the applicable principles of law, we disagree with its contentions and affirm.

The facts developed from the record are generally undisputed and summarized as follows. In 2014, the parties' prior collective negotiations agreement was set to expire on June 30, 2015. During their heated discussions about entering into negotiations for a new contract, plaintiff undertook a series of actions. Those actions included the teachers in plaintiff's association posting 200 to 300 of the subject signs throughout the district's fourteen schools' classroom doors and windows.

Defendant believed the posting of the signs violated its policy, which stated, among other things, that: "A teaching staff member shall not engage in any activity in the presence of pupils while on school property, which activity is intended and/or designed to promote further or assert a position on labor relations issues." Relying on that policy, defendant ordered the signs to be removed from school property.

On January 25, 2016, plaintiff filed its complaint seeking to stop the signs' removal, claiming that defendant's actions were unconstitutional. Plaintiff alleged that it was exercising its

right to free speech, and that defendant's requirement infringed on that constitutional right as well as the common law of the state of New Jersey. Plaintiff sought "monetary damages and attorneys['] fees pursuant to" 42 U.S.C. § 1983 because defendant "acted under color of State Law in its illegal action . . . ." It also sought "a permanent injunction enjoining [defendant] from attempting to apply its Board Policy to the signs . . . ."

At trial, plaintiff called the school district's acting superintendent, Dr. Nancy Gigante, as its sole witness. Gigante described the "state of labor relations in the district" at the time she was appointed, as not "good[,]" and explained that communication "was very limited . . . ." She testified that she determined that the signs violated defendant's policy and directed their removal after consulting with defendant's president, Fran Orthwein. Gigante acknowledged that although the actual words on the sign did not include a specific reference to a labor grievance, she "believe[d] that having [plaintiff's] name, . . . on the bottom [of the sign,] in the climate [they] were in[,] in terms of labor relations, . . . made [her] think it was a violation of that policy."

Defendant called three witnesses: Orthwein; Joseph Kyle, plaintiff's president; and Joan Benos, the Chief of Staff, Public Information Officer for the school district. Orthwein testified

4

as to the various measures plaintiff took in order to pressure defendant into altering its positions in the negotiations. According to her, plaintiff's members stopped running clubs at the school, and sent a letter to the students' parents "regarding the lack of a contract" and explaining "that because of the additional pressures put on the teachers by [the] State mandated new evaluation system . . . they . . . did not have time to run clubs for students in the elementary school." She stated that plaintiff's members posted hundreds of lawn signs in the community that contained plaintiff's name and logo and stated "We support Parsippany teachers . . . ." Teachers also wore black at back-to-school night, filed grievances against defendant for contractual violations, took out an ad in the newspaper, and rallied before a school board meeting.

Orthwein testified that the posting of the signs on classroom doors and windows was yet another "job action" taken by plaintiff to pressure defendant. She explained that she learned about the signs from Benos, who received a phone call from a parent who complained "that it was wrong, that [plaintiff] should not be bringing their contract issues in front of the students . . . ."[1] Orthwein also testified that she observed the signs firsthand at

---

[1] Benos corroborated this story when she testified.

two of the district's schools, and that they were "in virtually every single window in the building." She believed plaintiff was "obviously . . . trying to send a message to any passerby that . . . there had been this series of letters and actions that had led up and now this was one more. This was another putting forward the union position."

Kyle, on behalf of plaintiff, agreed with Orthwein's testimony that "the relationship between [defendant] and [plaintiff] was contentious." However, he testified that the negotiations that occurred were not any different than those in previous years. He also conceded that the posting of the signs was part of plaintiff's efforts to build unity. He explained that a member of plaintiff's "action committee" that was established "specifically for improving the situation in the district for moving the contract forward[,]" sent an email to teachers directing them to display the signs "on [their] classroom doors, wherever applicable."

After considering the testimony and other evidence adduced at the trial, Judge Hansbury issued a written statement of reasons, finding that defendant had not violated plaintiff's First Amendment rights, or any common law rights, in enforcing its policy. The judge relied upon our opinion in Green Township Education Association v. Rowe, 328 N.J. Super. 525 (App. Div.

2000), and quoted from it when he observed that "[t]he government as employer has far broader powers in regulating speech than does the government as sovereign." Noting that "protected speech is not unlimited[,]" the judge concluded that the matter turned on the context of plaintiff's actions occurring in a heated labor dispute, rather than a simple expression of a teacher's pride.

The judge stated that:

> the sign identifies that it is placed on behalf of plaintiff. The magnitude of the signs, 200 to 300 throughout fourteen schools, clearly constitutes a political statement at a time when labor negotiation contracts were . . . contentious . . . .
>
> These specific facts must be considered when determining whether the sign itself is protected speech. If one teacher placed on his or her bulletin board a statement that they were proud to be a Parsippany-Troy Hills teacher, that may well be protected speech. . . . [T]he timing of the posting and the very significant number of signs makes this conduct similar to shouting fire in a crowded movie theater without fire being present.

On September 29, 2016, the judge issued an order of judgment in favor of defendant, finding that "its actions [were] not in violation of [plaintiff's] First Amendment rights and/or Common Law of the State of New Jersey . . . ." This appeal followed.

On appeal, plaintiff contends that Judge Hansbury "erred in basing [his] legal conclusion on the context of the labor

relations . . . rather than on the speech contained in the sign itself." According to plaintiff, the judge misinterpreted Green Township in reaching his decision. As plaintiff argues, it is not defendant's policy itself that plaintiff is challenging, "[r]ather, it is [defendant's] application of that policy" to the signs. According to plaintiff, "the speech expressed on the . . . signs pose[d] no risk of interference with [the] teachers' job performance or students' education." It further argues that the judge's decision "creates a prior restraint on . . . [plaintiff's] speech . . . ." We disagree.

The scope of our review of a judgment entered in a non-jury case is limited. "[W]hen supported by adequate, substantial and credible evidence[,]" a trial court's findings "are considered binding on appeal" and "should not be disturbed unless . . . 'they are so wholly insupportable as to result in a denial of justice . . . .'" Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 483-484 (1974) (citations omitted); Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017). However, we are "not bound by a trial court's evaluation of the legal implications of facts where credibility is not an issue." Empower Our Neighborhoods v. Guadagno, 453 N.J. Super. 565, 583 (App. Div. 2018) (citing Allstate Ins. Co. 228 N.J. at 619).

With these guiding principles in mind, we begin our review by recognizing that freedom of speech is protected by both our federal and state constitutions. The guarantees of both are coextensive and guard against impermissible violations. Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 264 (1998) ("Because we ordinarily interpret our State Constitution's free speech clause to be no more restrictive than the federal free speech clause, '[w]e rely on federal constitutional principles in interpreting the free speech clause of the New Jersey Constitution.'" (alteration in original) (citations omitted)).

Also, it is beyond cavil that a teacher, or for that matter any other public employee, is not only permitted but indeed should be applauded for expressing their pride in their work. The issue here, however, is whether defendant could regulate such expressions by plaintiff's members under the circumstances of this case.

The present dispute asks us to determine, as we did in Green Township, "the extent to which a governmental employer may restrict its employees' freedom of speech in the setting of the workplace." 328 N.J. Super. at 528. We conclude from our review that Judge Hansbury properly applied our holding in Green Township and recognized that within a workplace, a public employee's "right of free speech is not a license to express one's opinions 'at any

public place and at any time.'" 525 N.J. Super. at 534 (quoting Hurwitz v. Boyle, 117 N.J. Super. 196, 201 (App. Div. 1971)). Reasonable restrictions can apply when they arise from a labor dispute, even when the content of the speech does not specifically refer to the labor dispute or negotiations.

Green Township involved a similar set of facts, but the content of the challenged speech in that case related specifically to the parties' labor dispute. There, in the midst of contract of negotiations, "teachers began displaying buttons reading 'NJEA SETTLE NOW' while in the presence of students in the school building." Id. at 529. Citing its policy, the board directed the union "members to refrain from wearing the buttons in the presence of students while on school premises." Ibid.

The policy provided in relevant part:

> All employees are prohibited from engaging in any activity with students during performance of the employees' duties, which activity is intended or designed to promote, further or assert a position on any voting issue, board issue, or collective bargaining issue.
>
> [Id. at 529.]

In deciding whether the board's conduct was constitutional, we posed "the question [as] whether the [b]oard's . . . prohibition against displaying the [union's] buttons impose[d] a 'real' and 'substantial' burden on constitutionally protected

conduct." Id. at 534. We noted that "[e]very American has the right to express an opinion on issues of public significance. Teachers are not relegated to 'a watered-down version' of constitutional rights." Ibid. (citations omitted). However, we recognized that "the government as employer has far broader powers in regulating speech than does the government as sovereign [and c]onstitutional review of government employment decisions . . . rest[] on different principles than review of speech restraints imposed by the government as they apply to the general citizenry." Ibid. (citations omitted). We stated, "government may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." Id. at 535 (citing Pickering v. Bd. of Educ., 391 U.S. 563, 573-74 (1968)). We analyzed whether "the employee's speech that is prohibited may be 'fairly characterized as constituting [expression] on a matter of public concern[,]'" id. at 535-36 (first alteration in original) (quoting Connick v. Meyers, 461 U.S. 138, 146 (1983)), and found no issue with the "[b]oard's prohibition against wearing the . . . buttons in the presence of students while on school premises." Id. at 538.

We observed:

> Although educational policy and labor relations are undoubtedly subjects of public concern, teachers obviously have a personal

11

stake as well in seeking solutions and resolving problems in these areas. Whatever interest teachers have in expressing their views concerning the operation of the public schools is surely diminished in the setting of the classroom in the presence of students. The objective of the teacher in this context must be to educate his or her students and not to advance his or her self-interest. Conversely, the Board of Education has no interest in barring teachers from expressing their views on educational policy. "But where government is employing someone for the purpose of effectively achieving its goals," it has an interest in restricting its employee's speech in order to accomplish that objective.

. . . .

We are satisfied that the [b]oard's directive does not suffer from overbreadth. The first rule of teaching should be that teachers shall teach. A classroom is not a place for proselytizing students to advance a teacher's financial interests. Nor should a classroom be transmogrified into a teacher's soapbox. Just as a board of education may set the curriculum, it may also require teachers to confine their classroom activities to providing students with a thorough and efficient education.

[Id. at 536, 538 (citations omitted).]

We cautioned, however, that "[g]overnment cannot restrict the speech of the citizen just in the name of efficiency. But where government is employing someone for the very purpose of effectively achieving its goals, such restrictions may well be appropriate." Id. at 538-39.

A-0992-16T4

Here, Judge Hansbury correctly determined that the fact that the content of the speech was not specifically directed toward the parties' dispute did not prevent defendant from regulating it under the circumstances. Contrary to plaintiff's argument, the context of a public employee's exercise of his or her First Amendment rights must be considered when determining whether a public employer's restrictions are justified.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48; Senna v. Florimont, 196 N.J. 469, 500 (2008) ("The critical inquiry in determining whether speech involves a matter of public interest is the content, form, and context of the speech.").

> [W]e must view [the employee's] statements in context . . . . We can[]not 'cherry pick' something that may impact the public while ignoring the manner and context in which that statement was made or that public concern expressed. Our inquiry must also consider the form and circumstance of the speech in question.
>
> [Miller v. Clinton Cty., 544 F.3d 542, 550 (3d Cir. 2008).]

See also In re Disciplinary Action Against Gonzalez, 405 N.J. Super. 336, 347 (App. Div. 2009) ("In balancing employee and employer interests . . ., courts must consider not only the content

13

of the speech, but also the 'manner, time, and place in which it is delivered.'" (citations omitted)).

Addressing the context of plaintiff's attempt to exercise its right to free speech, we first note that it took place within the schools that are owned and regulated by defendant. These buildings are not "public fora." Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 267 (1988); see also Desilets on Behalf of Desilets v. Clearview Reg'l Bd. of Educ., 266 N.J. Super. 531, 539-40 (App. Div. 1993). Defendant's schools are regulated by its policies that stated the purposes for which they can and cannot be used by its employees. See Desilets on Behalf of Desilets, 266 N.J. Super. at 539. Plaintiff, again, does not challenge defendant's policy here. Nevertheless, we must assess whether the restriction imposed by the policy's application unreasonably impinged upon plaintiff's right to freedom of speech. See Green Twp., 328 N.J. Super. at 538 ("consider[ing] separate[ from the constitutionality of the board's policy, whether] the [b]oard's prohibition against wearing the [union's] buttons in the presence of students while on school premises . . . suffer[s] from overbreadth").

In an opinion handed down after Green Township, the United States Supreme Court, in Garcetti v. Ceballos, 547 U.S. 410 (2006), addressed the manner that a court should consider a public employee's challenge to an employer's restriction on First

Amendment rights. In that case, the United States Supreme Court considered whether an internal memorandum from a deputy district attorney to his supervisor criticizing an affidavit the police used to obtain a critical search warrant was protected speech under the First Amendment. <u>Garcetti</u>, 547 U.S. at 413-16. Claiming that he was later retaliated against by his employer for speaking out, the deputy district attorney filed an action under 42 U.S.C. § 1983 asserting violations of the First and Fourteenth Amendments. <u>Id.</u> at 414.

In considering the issue, the Supreme Court explained that the proper analysis for determining "the constitutional protections accorded to public employee[s'] speech" at work was to apply a two-part "inquiry." <u>Id.</u> at 418 (citing <u>Pickering</u>, 391 U.S. at 568). It stated:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.
>
> [<u>Ibid.</u> (citations omitted).]

The Court held that the prosecutor's claim failed on the first of these two inquiries in light of the Court's holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes . . . ." Id. at 421.

Applying that analysis here, we recognize at the outset that plaintiff was not "mak[ing] a statement[] pursuant to [its ordinary job] duties, [and therefore, it was] speaking as [a private] citizen[] . . . .[2]" Ibid. Turning to whether the speech related to a matter of public concern, it is clear that the posting of the signs was not exclusively the result of teachers wanting to express their view about a matter of public concern, as it was also admittedly part of a concerted labor tactic seeking to promote plaintiff's members' "self-interest" in the context of their labor negotiations. However, because there was some level of public concern expressed by the teachers' actions here, "the possibility of a First Amendment claim arises." Id. at 418. Turning, therefore, to the second inquiry, "whether [defendant] had an adequate justification for treating [plaintiff] differently from

---

[2] The mere fact that an individual's speech "relates to public employment" or "concerns information acquired by virtue of his public employment does not transform that speech into employee — rather than citizen — speech." Lane v. Franks, 573 U.S. ___, ___, 134 S. Ct. 2369, 2379 (2014).

any other member of the general public[,]" ibid. (citing Pickering, 391 U.S. at 568), we conclude that defendant's actions were justified.

Defendant's employment policy prohibited plaintiff's members' from posting the signs on school premises because it interfered with the students' classroom learning environment. Plaintiff does not challenge that policy and, given that there were hundreds of signs posted and testimony regarding a parent's complaint that "[plaintiff] should not be bringing their contract issues in front of the students[,]" defendant "could reasonably have concluded that such displays carry a risk of interfering with the performance of" the teachers in educating their students. Green Twp., 328 N.J. Super. at 539. "A classroom is not a place for proselytizing students to advance a teacher's financial interests. Nor should a classroom be transmogrified into a teacher's soapbox." Id. at 538 (citation omitted). And, "where [the] government is employing someone for the very purpose of effectively achieving its goals, [in this case educating students], such restrictions [on speech] may well be appropriate." Id. at 538-39. Under these circumstances, we no find no error in Judge Hansbury's consideration of the context of plaintiff's or its members' speech.

Finally, we turn to plaintiff's argument that the defendant's prohibition "effectively constitute[s] a prior restraint on

speech." We conclude plaintiff's contention is without merit because defendant's prohibiting the signs did not leave plaintiff without other avenues to express its message. See Verniero, 156 N.J. at 284 (stating a factor to be "considered in determining if a restriction is a prior restraint is whether it 'prevents the expression of a message'"); see also Murray v. Lawson, 138 N.J. 206, 222 (1994). Defendant's enforcement of its policy did "not act as a prior restraint . . . because it [did] not prohibit plaintiff[] from expressing [its] message entirely. Rather, [it is] simply prohibited from expressing" its message on labor relations while on school premises in front of the students. Verniero, 156 N.J. at 285 (citation omitted). There were ample alternative avenues through which plaintiff was free to express its message, which plaintiff took advantage of by sending letters to parents, posting lawn signs, conducting a rally before a board meeting, and taking out an ad in the newspaper, all without issue. There was no prior restraint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0992-16T4