**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0782-23

JG ELIZABETH II, LLC,

      Plaintiff-Respondent,

v.

JERSEY GARDENS DENTAL, PA,
DENTMALL MSO, LLC, and
STOMATCARE DSO, LLC,

      Defendants-Appellants.

_____

         Submitted November 19, 2024 – Decided February 11, 2025

         Before Judges Perez Friscia and Bergman.

         On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0637-22.

         Law Offices of Steven J. Sico, LLC, attorney for appellants (Steven J. Sico, of counsel and on the brief).

         Weiner Law Group LLP, attorneys for respondent (Lawrence M. Berkeley, of counsel and on the brief).

PER CURIAM

Defendants Jersey Gardens Dental, PA (JGD), Dentmall MSO, LLC (Dentmall) and Stomatcare DSO, LLC (Stomatcare) appeal from a trial court order granting summary judgment in favor of plaintiff JG Elizabeth II, LLC and entering judgment of $30,106.45 as against Stomatcare as guarantor of JGD for rent and other costs under its commercial lease with plaintiff. Defendants also challenge a subsequent order granting plaintiff attorney's fees against them for $27,472.47. Because we conclude genuine factual issues exist as to whether a portion of the payments allegedly made to plaintiff by Stomatcare should be credited against its obligation under its guaranty, we vacate the order as against Stomatcare and remand to the trial court for further proceedings. We affirm the trial court judgments entered against all other defendants. We further vacate the trial court's order assessing attorney's fees against defendants and remand for further proceedings consistent with this opinion.

I.

Plaintiff owns and operates The Mills at Jersey Gardens, an outlet mall located in Elizabeth. On August 30, 2004, plaintiff and JGD entered into a ten-year commercial lease (lease) to rent space for its dental office. Thereafter, the parties entered into a first lease amendment dated September 2, 2015 which extended the terms of the lease through January 31, 2016. The parties then

entered a second lease amendment dated November 21, 2016 that extended the lease term through July 31, 2017, and also included a guaranty from defendant, Dentmall MSO, LLC, for all payments due and owing to plaintiff from JGD for the term of the lease.

Subsequently on April 6, 2018, plaintiff, JGD and Dentmall entered into a third lease amendment, which extended the lease term through January 31, 2019, and also included an additional guaranty from Stomatcare which guaranteed all payments due and owing to plaintiff from JGD through the term of the lease. A fourth lease amendment dated March 17, 2020 was later entered by the parties. Relevant to this appeal, the parties executed an amended guaranty as part of the fourth lease amendment which limited the guarantors' liability "to an amount equal to four (4) months' Minimum Rent, Percentage Rent and additional rent in effect at the time tenant defaults under the terms of the Lease, plus all additional costs." Alex Mikhailov, owner of JGD, executed the third and fourth lease amendments, on behalf of JGD and executed the guaranty on behalf of Stomatcare and Dentmall, as the managing member of both companies.

On September 22, 2021, plaintiff sent JGD a written notice of default for the delinquent amount of $14,577.39 under the lease. Thereafter, on March 3, 2022, plaintiff filed a complaint against all defendants for back rent and other

A-0782-23

costs owed as well as a request for attorney's fees. In May 2023, plaintiff moved for summary judgment against all defendants. Plaintiff asserted JGD vacated the premises on January 31, 2022, and owed $44,368.18[1] in unpaid rent and other costs due under the lease from July 1, 2021 through its vacation in January 2022. Plaintiff demanded payment of $34,784.85 from JGD, which represented the rent and expenses owed on the lease in the amount of $44,368.18 less the security deposit of $9,583.33. Further, plaintiff demanded $30,106.45 of the amount owed from Dentmall and Stomatcare under their guarantees.

Defendants argued the total amount owed pursuant to the fourth lease amendment was $36,758.40. Defendants supported their calculation of the amount owed from language in the fourth lease amendment, which stated:

> For the period February 1, 2020 through and including the remainder of the Fourth Extended Lease Term . . . [January 31, 2022] . . . Tenant shall pay Landlord a minimum Rent in the fixed amount of Thirty-Six and 00/100 Dollars annually [and]

> For the period of February 1, 2020 through and including the remainder of the Fourth Extended Lease Term . . . [January 31, 2022] . . . Tenant shall pay Landlord the Common Area Expenses in the fixed amount of Twenty-Seven Thousand Fourteen Dollars and 40/100 ($27,014.40) annually.

---

[1] In total, plaintiff alleged it was owed $64,368.18. Plaintiff asserted it credited payments of $20,000 made by defendants to reduce the total amount rent due to $44,368.17.

A-0782-23

Defendants also disputed the amount owed to plaintiff from Dentmall and Stomatcare under the guarantees. Defendants argued the fourth lease agreement "caps the Guaranty of the lease, as to all guarantors, only to four (4) months of rental monies." Therefore, Stomatcare—"the only [financially] viable entity left"—argued it should be credited $20,000 against the amount owed on its guaranty.

In reply, plaintiff asserted that although defendants were correct that pursuant to the fourth lease amendment they owed $3,000 monthly for rent and $2,251.20 monthly for common area expenses, the lease also required JGD to pay the real estate taxes, electricity, HVAC, water, and sewage fees.

Furthermore, plaintiff argued the guaranty as part of the fourth lease amendment states the guarantors must guaranty all the obligations under the lease. Plaintiff explained the cap is for four months of rent and other expenses required to be paid by defendants pursuant to the terms of the lease. Plaintiff claims defendants owed approximately $64,000 for the months of July 2021 through the first day of February of 2022, comprised of rent, common area expenses, taxes and other costs. Plaintiff explained the security deposit and the $20,000 paid towards JGD's obligations were accurately credited. More specifically, plaintiff explained that the "[$20,000] is credited to the entire

5

liability of all the defendants. That [is] why instead of owing us $64,000 they really owed, in total, $44,000." Plaintiff argued "if [JGD] only owe[d] $20,000[], then the guarantor would only owe $20,000.00. But in reality, they owe $44,000[]. We could only collect [$30,000] from Stomatcare, per our calculations."

The trial court found that no genuine factual issues existed concerning the outstanding balance defendants owed plaintiff. The court found the certification of Matthew Bayerstedt, an employee of plaintiff, submitted with its motion supported the amount plaintiff asserted was owed. The court further noted that under Section 7.01 of the lease, tenant was also responsible for the real estate taxes and other costs under the lease. The court granted plaintiff's summary judgment motion and awarded $34,784.85 against JGD.

The court found the ledger provided as an exhibit to Bayerstedt's certification showed the balance owed from JGD was credited with four separate payments totaling $20,000. As to Stomatcare, the court noted the binding guarantees stated in pertinent part:

> [Guarantor] does hereby absolutely and unconditionally guarantees to Landlord, its successors and assigns, the full and prompt payment when due, of all rents, charges and additional sums coming due under said Lease, together with the performance of all covenants and agreements of the Tenant therein

6

contained and together with the full and prompt payment of all damages that may arise or be incurred by Landlord in consequence of Tenant's failure to perform such covenants and agreements (all such obligations hereinafter collectively referred to as 'Liabilities').

Further, the court highlighted the fourth lease amendment, which modified the prior guaranties, read:

Effective of the date of this Fourth Lease Amendment, the Guaranty of the lease shall be amended in part by the addition of the following: Notwithstanding anything herein to the contrary, Guarantor's Liabilities shall be limited to an amount equal to four (4) months Minimum Rent, Percentage Rent and additional rent in effect at the time Tenant defaults under the terms of the Lease, plus all additional costs.

The court found pursuant to the unambiguous language of the guaranty in the fourth lease amendment, defendants Stomatcare and Dentmall owed a total of $30,106.45 (from October 1, 2021-January 31, 2022). The court relied on the calculations of this amount in the certification of plaintiff's representative submitted with their summary judgment motion.

In its decision, the court highlighted defendants' admission at oral argument that it was unable to point to any provision in the fourth lease amendment or the original lease to suggest that the credits provided to tenant should be credited against guarantors' obligations. In granting plaintiff's

7

summary judgment motion and entering judgment against Stomatcare and Dentmall, the court noted the fourth lease amendment's guaranty capped the balance obligation at four months of rent and other costs, which totaled $30,106.45.

Plaintiff's motion also requested $27,472.47 in attorney's fees and costs. Defendants opposed plaintiff's request primarily arguing the amount of plaintiff's fee request was unreasonable because "the amount in controversy was approximately $34,784, but [p]laintiff's counsel is seeking $27,472 in attorney's fees. This fee constitutes approximately 80% of the underlying claim."

The trial court found plaintiff's request for attorney's fees was reasonable. The court found that "[w]ithin the various Lease Agreements and Amendments, Guarantees and other contractual terms, the parties agreed that either party is entitled to recover costs, expenses, and attorney's fees incurred in connection with a lawsuit in the case of default by either party." The court explained attorney's fees requested by plaintiff were reasonable because the total judgment was "$64,891.30." The court added that defendants' opposition misstated the amount in controversy and the total costs awarded on summary judgment was $34,784 against JGD, and an additional $30,106.45 as against Stomatcare and Dentmall based on the guarantees, for a total judgment of $64,891.30. The court

A-0782-23

disagreed with defendants' opposition that the fee "constituted approximately 80% of the underlying claim" based on $64,891.30. Furthermore, the court found plaintiff's proposed expenses totaling $1,319.47 with an additional $100 in advanced filing fees were reasonable given the circumstances.

On appeal, Stomatcare argues the trial court's grant of summary judgment was erroneous because genuine issues of material fact existed concerning the amount owed by it under the guaranty. To the best we can discern, all defendants argue the court's award of attorney's fees was erroneous and excessive. Defendants contend there were genuine issues of material fact in dispute concerning the credits to be applied to Stomatcare under the guaranty which precluded summary judgment. More specifically, Stomatcare contends "[t]he amount that was paid for rent during a default of tenants paid by Stomatcare should have been credited to the four (4) month capped guaranty that was due as per the Fourth Lease Amendment." Defendants further argue because the court erred in its decision in granting summary judgment, an award of attorney's fees was inappropriate, and the attorney's fees assessed by the trial court was unreasonable.

A-0782-23

II.

We review a trial court's grant of summary judgment de novo. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) (citing Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013)). On appeal, a trial court's interpretation of the law and its application to factual circumstances are not afforded deference by the reviewing court. Brandt, 214 N.J. at 92. Rather, this court will review anew the summary judgment determination on appeal. Id.

In deciding motions for summary judgment, courts must determine whether genuine issues of material fact are present, which requires an evaluation whether the evidentiary materials—viewed in the light most favorable to the non-movant—would lead a rational factfinder to decide in favor of the non-movant. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995); see also R. 4:46-2. The type of evidence considered in such determinations includes answers to interrogatories, admissions, pleadings, affidavits, and depositions. O'Neill, 217 N.J. at 115.

A.

The parties do not dispute they are governed by the terms of the written lease agreements and guaranties; therefore, we review these documents under contractual principles. Generally, contract interpretation is subject to de novo

review.  Kieffer v. Best Buy, 205 N.J. 213, 222 (2011).  "Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes."  Id. at 223.  See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).  Courts enforce contracts based on the parties' intent, the underlying purpose of the contract, and the surrounding circumstances.  Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 415 (2016).  "The judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves."  Kieffer, 205 N.J. at 223.  "The document must be read as a whole, in 'accord with justice and common sense.'"  Cumberland Cnty. Imp. Auth. v. GSP Recycling Co., Inc., 358 N.J. Super. 484, 497 (App. Div. 2003) (quoting Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956)).

Generally, courts give contractual terms their plain and ordinary meaning. Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002).  When those terms are "'clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'"  Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)).

11

Our de novo review of the record discloses there were four lease amendments between the parties. The plain meaning of the fourth lease amendment clearly capped Stomatcare's liability "to an amount equal to four (4) months Minimum Rent, Percentage Rent and additional rent in effect at the time Tenant defaults under the terms of the Lease, plus all additional costs."

The court based its calculations of these amounts on the certification and ledger of plaintiff's representative. We agree with the trial court that defendants failed to present any information to dispute the accuracy of plaintiff's submission and therefore, failed to prove, even in light most favorable to them, that genuine issues of material fact existed related to the amounts owed. We further note, defendants failed to address the amount owed in their merits brief. The consequence of failing to brief an issue is waiver or abandonment of that issue on appeal. See Gormley v. Wood-El, 218 N.J. 72, 95 (2014); Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived").

Having concluded the trial court's calculation of the cap under the guaranty was appropriate, we turn now to Stomatcare's argument that the court erred by not applying the $20,000 paid to the cap it owed pursuant to the

A-0782-23

guaranty in the fourth lease amendment. The original lease agreement between JGD and plaintiff at Section 13.01 entitled "Default," states:

> [I]f any one or more of the following events occur, said event of events shall hereby be classified as a "Default":
>
> (a) If tenant fails to pay Minimum Rent, Additional Rent or any other charges required to be paid by Tenant when same shall become due and payable, and such failure continues for ten (10) days after written notice thereof to Tenant.

(Emphasis added).

We note, pursuant to this paragraph of the lease, a notice of default was sent to all defendants on September 22, 2021. Therefore, we conclude based on the clear terms set out at Section 13.01 of the lease, that the date of defendants' default was October 2, 2021—ten days after notice was provided. Accordingly, even assuming Stomatcare, not JGD, made the four $5,000 payments, the first three were made prior to the service of the notice of default on defendants. Therefore, we are unpersuaded by Stomatcare's argument that the $20,000 allegedly paid to plaintiff was required to be credited against the amount owed under the guaranty. Since $15,000 of these payments were made prior JGD's default which occurred on October 2, these payments clearly were not made against the guaranty because Stomatcare's obligation under the guaranty was not

13

yet due and payable. Consequently, these payments cannot properly be applied to Stomatcare's obligation under the guaranty.

We reach a different conclusion with respect to the final payment of $5,000 made on October 13. Stomatcare claims it paid the $5,000, while plaintiff claims the payment was made by JGD. When viewed in a light most favorable to Stomatcare, we determine there is a genuine issue of material fact concerning whether it made and should be credited for the October 13 payment of $5,000 made after JGD was held in default. Because this payment was sent and received after the October 2 default date, if found to be paid by Stomatcare, a credit of $5,000 may be owed to Stomatcare against the guaranty cap of $30,106.45 that the judgment was based upon. Because we determine these disputed issues are material to the amount owed on Stomatcare's guaranty, summary judgment was not appropriate. Therefore, we are constrained to vacate the judgment amount entered against Stomatcare and remand this issue to be determined at a trial.

B.

We now turn to defendants' appeal of the trial court's order awarding plaintiff attorney's fees and costs of $27,472.47 against them. On appeal, defendants reiterate their argument made to the trial court that the $20,000 paid

should have been credited to the capped four-month guaranty and "the courts entry of attorney fees [against it] should be vacated since Summary Judgment should not have been granted."

Attorneys' fees may be awarded if they are authorized by a contract, a statute, or court rule. Empower Our Neighborhoods v. Guadagno, 453 N.J. Super. 565, 579 (App. Div. 2018). The amount of an attorneys' fees award "rests within the sound discretion" of the trial court, and we review the award for an abuse of discretion. Ibid. "[F]ee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Ibid. (alteration in original) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)).

When attorneys' fees are authorized by a contract, a reasonableness test is used in awarding attorney's fees. See Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009); see also N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999). "The starting point in awarding attorneys' fees is the determination of the 'lodestar,' which equals the 'number of hours reasonably expended multiplied by a reasonable hourly rate.'" Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004) (quoting Rendine v. Pantzer, 141 N.J. 292, 335 (1995)). "[T]he trial court should satisfy itself that the assigned hourly rates

15

are fair, realistic, and accurate, or should make appropriate adjustments." Rendine, 141 N.J. at 337. In assessing the request, the court should consider the factors laid out in RPC 1.5(a). A party seeking attorneys' fees is required to submit an affidavit of services addressing the RPC 1.5(a) factors. R. 4:42-9(b).

Here, the trial court made detailed findings citing the applicable rule and case law. However, when considering the reasonableness of the amount of plaintiff's fee request, the court added the judgment amount entered against JGD to the judgment amount entered against Dentmall and Stomatcare. Since the total amount owed by all defendants was $34,784.85 as set forth in the judgment entered against JGD as the lessor, we determine the judgment could not exceed this amount. We determine under the trial court's reasoning that Stomatcare, as the guarantor of JGD, was only responsible for up to $30,106.45 of the judgment. Instead, the court mistakenly added the judgments of JGD, Dentmall and Stomatcare when calculating the $64,891.30 figure. Because it is unclear whether the court's award was partially based on consideration of an incorrect amount, we are constrained to vacate the order awarding plaintiff attorney's fees against all defendants. In addition, since we have remanded the issues related to the potential credit owed to Stomatcare on its guaranty which will require

16

further proceedings and additional time to be incurred by the parties' counsel, we leave the attorney's fees issues to the discretion of the trial court on remand.

Reversed and remanded. We do not retain jurisdiction.jug

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION