275 N.J. Super. 428 (1994)
646 A.2d 492
GEORGE DZIUBEK, SHIRLEY NAGY, THOMAS STAGNITTI, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF ARLENE STAGNITTI LIVA, DECEASED AND THOMAS STAGNITTI, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
FREDERICK J. SCHUMANN AND BRADFORD C. LIVA, M.D., DEFENDANTS. BRADFORD C. LIVA, M.D., AS GENERAL ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF ARLENE E. LIVA, DECEASED, BRADFORD C. LIVA, M.D., INDIVIDUALLY, BRADFORD LIVA, JR., BY HIS PARENT AND NATURAL GUARDIAN, BRADFORD C. LIVA, M.D., JUSTIN LIVA, BY HIS PARENT AND NATURAL GUARDIAN, BRADFORD C. LIVA, M.D., AND ALEXANDRA LIVA, BY HER PARENT AND NATURAL GUARDIAN, BRADFORD C. LIVA, M.D., PLAINTIFFS,
v.
FREDERICK JOSEPH SCHUMANN, DEFENDANT-RESPONDENT. GEORGE DZIUBEK, SHIRLEY NAGY, SUPRA SPORTS INC., CHRIS CRAFT INDUSTRIES, INC. AND BARNES BROS. MARINA, INC., DEFENDANTS, MESSRS. WEINER & SHANKER, APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 1994.
Decided July 25, 1994.
*430 Before Judges MICHELS, SKILLMAN and WEFING.
*431 Arthur L. Shanker argued the cause for appellant Weiner & Shanker, pro se.
Robert R. Levinson argued the cause for respondents George Dziubek, Shirley Nagy, Thomas Stagnitti, Individually and as Administrator Ad Prosequendum of the Estate of Arlene Stagnitti Liva, Deceased (Levinson, Feinson and DeFilippo, attorneys; Mr. Levinson, of counsel and on the brief).
Peter N. Gilbreth argued the cause for respondent Frederick J. Schumann (Stephen S. Weinstein, attorney; Mr. Gilbreth, of counsel and on the letter brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
We granted leave to Messrs. Weiner & Shanker, attorneys for plaintiff Bradford C. Liva, M.D. (Dr. Liva), Individually, as General Administrator and Administrator Ad Prosequendum of the Estate of Arlene E. Liva, Deceased, and as Parent and Guardian of Bradford C. Liva, Jr., Justin Liva and Alexandra Liva, to appeal from two orders of the Law Division that awarded attorney fees of $10,475 to Messrs. Levinson, Feinson and DeFilippo, attorneys for plaintiffs George Dziubek (Dziubek), Shirley Nagy (Nagy) and Thomas Stagnitti (Stagnitti), Individually and as Administrator Ad Prosequendum of the Estate of Arlene Stagnitti Liva, Deceased, and $2,187.50 to Stephen S. Weinstein, Esq., attorney for defendant Frederick J. Schumann (Schumann). The trial court assessed the attorney fees against Messrs. Weiner & Shanker because of the conduct of its associate, Philip Morell, Esq., in connection with the aborted settlement of the matter with Dr. Liva.
The question is whether the trial court possessed the power or authority to award attorney fees as a sanction for an attorney's conduct. We hold that in the circumstances of this case the trial court did not have such power or authority and, therefore, reverse the orders under review.
*432 This matter arose out of a boating accident that occurred on Lake Hopatcong in Morris County, New Jersey. Schumann was the owner and operator of the boat that collided with a boat owned and operated by Dr. Liva. Arlene Stagnitti Liva, the wife of Dr. Liva and the mother of his three children, was a passenger in the boat and was killed as a result of the accident. Stagnitti, the father of Arlene Stagnitti Liva, and the grandfather of the three Liva children, individually, and as Administrator Ad Prosequendum of the Estate of Arlene Stagnitti Liva, together with Nagy and Dziubek, who were passengers in Schumann's boat, instituted an action against Dr. Liva and Schumann. After the Stagnitti suit was instituted, Dr. Liva, individually and as General Administrator and Administrator Ad Prosequendum of the Estate of Arlene Stagnitti Liva, and as the parent and natural guardian of his three children, instituted a separate suit against Schumann, Dziubek, and Nagy as well as defendants Supra Sports Inc., Chris Craft Industries, Inc. and Barnes Bros. Marina, Inc. The trial court consolidated both actions.
Dr. Liva moved to dismiss Stagnitti's action. The trial court denied the motion and ordered that Stagnitti be appointed as both Administrator Ad Prosequendum of the Estate of Arlene Stagnitti Liva and Guardian Ad Litem of the three infant children. The trial court also ordered that Stagnitti's complaint be deemed amended to contain the causes of action set forth in Dr. Liva's complaint. The trial court explained that while Dr. Liva could administer the estate of his wife, he could not represent the estate in the action because of a conflict of interest concerning his status as a defendant.
The trial court issued a scheduling order for pretrial discovery proceedings. When Dr. Liva failed to answer interrogatories as required by the scheduling order, his complaint against Barnes Bros. Marina, Inc. was dismissed without prejudice. Additionally, summary judgment was entered in favor of Supra Sports Inc. and Chris Craft Industries, Inc. because Dr. Liva failed to produce an expert report to prove any defect in the boat manufactured and *433 sold by them. Barnes Bros. Marina, Inc. then moved to dismiss Dr. Liva's complaint with prejudice. Since the trial court did not receive an affidavit or certification from Dr. Liva attesting that he understood the case was being dismissed, the trial court directed Messrs. Weiner & Shanker to appear in court to explain.
Although the record is not entirely clear, the parties claimed that Morell represented to the trial court that Dr. Liva knew that his case was being dismissed and that Dr. Liva had advised the Weiner & Shanker law firm that he was no longer interested in pursuing the claim and instructed the firm to dismiss the case. Morell allegedly represented to the trial court that releases would be executed by Dr. Liva by the end of the day. The trial court thereupon directed that a conference call take place if releases were not received by a certain date. The releases received were not unqualified in form, and, therefore, a conference call was held by the trial court. Participating in that call were Robert R. Levinson, Esq., and Angel M. DeFilippo, Esq., who represented Stagnitti, Nagy and Dziubek, Peter Gilbreth, Esq., who represented Schumann, and Morell. During the conference call, Morell allegedly informed the trial court and the attorneys that new releases would be executed by Dr. Liva for $1.00.
It appears that the trial court granted Schumann's liability insurance carrier's motion to deposit with the court the $300,000 limit of coverage provided by the policy of insurance. Since Stagnitti, Dziubek and Nagy considered the matter settled, they moved (1) to enforce the settlement, (2) to appoint a guardian for the three Liva children, and (3) to distribute the $300,000 deposited in court. Dr. Liva opposed the motion, contending that although he executed the releases he felt that he was entitled to share personally with his children in the distribution of the $300,000 fund. Morell certified that he never intended to waive Dr. Liva's right to share in the $300,000, but merely meant to facilitate the distribution of the $300,000. The trial court immediately ordered a plenary hearing.
*434 At the hearing, Dr. Liva testified that he understood that the $300,000 would go to his wife's estate and that all other claims would be "basically wiped out." He further testified that he understood that the estate would get the entire $300,000 and that the trial court would distribute the funds between the three children and himself. Dr. Liva testified that he understood that if he withdrew his action against Schumann, then Dziubek and Nagy would withdraw their action against him. Dr. Liva also testified that Morell told him, following Morell's meeting with the trial court, that he needed the releases because the matter "had been dragging on for so long" and that "the judge wanted to get this thing straightened out and settled." He testified that when Morell presented the releases they were in blank form, that Morell told him that he needed the releases, and that they should be signed. Consequently, he signed them in blank, but never saw the releases completed until they were shown to him shortly before the hearing. Dr. Liva reiterated that it was his "understanding that the only people  the only entity that would be receiving the $300,000 was the estate. So that left myself and the three children as sole beneficiaries of the estate." Finally, Dr. Liva testified that he never intended to give up his claim as a surviving spouse.
Morell testified that the releases were signed by Dr. Liva in blank. He explained to Dr. Liva that Dziubek and Nagy would be executing corresponding releases and Dr. Liva would be dropping his personal lawsuit against them, and they in turn would be dropping their lawsuit against him. Morell testified that he further explained to Dr. Liva that the $300,000 had been deposited into court; that a motion had been or would be made to appoint a guardian for the three children to distribute the funds; that Dr. Liva would be executing the releases to facilitate these events; and that Dr. Liva "would personally be sharing in that distribution, if the guardian had felt that was appropriate." According to Morell, Dziubek and Nagy would not share in the proceeds of distribution. Finally, Morell emphasized that Dr. Liva intended to "drop [his] personal lawsuit for [one] dollar."
*435 At the conclusion of the hearing, the trial court held that the parties had not reached an understanding as to the settlement and, therefore, denied the motion to enforce the settlement and to distribute the $300,000 deposited in court. The trial court, in part, reasoned:
Now it's  it's troublesome  troubling to me because I participated, along with counsel, both on the bench and off, in some discussions where I'm frankly convinced that Mr. Levinson, Miss DeFilippo, Mr. Wilson and Mr. Gilbreth were led to understand certain things.
But those understandings, as much as I may have been in part witness to them, I am troubled because I find credible the testimony of Dr. Liva as to what he did and what he understood at the time he gave releases.
I am very troubled by an attorney who makes incomplete representations, or even false representations to a Court. I am also troubled when those representations are made to his client, and though they may have been true at the time he made them as to what he believed or what his client believed he was doing when he executed the releases, there's an ongoing obligation as an attorney in a fiduciary relationship with one's client, as an officer of the court in my view, to tell one's client, if circumstances change or if you now understand things a little differently than you did earlier.
* * * * * * * *
... Dr. Liva did not understand the basis upon which Mr. Morell was to tender the releases any way except as he testified. It's clear to me.
Now what does that mean? That means that Dr. Liva is not going to be held to any releases that are given. Neither are Mr. Dziubek and Miss Nagy to be held to any sort of settlement understanding or agreement that they may have had that they had to give up any rights against Dr. Liva.
As far as I am concerned, Dr. Liva thought there was a wash. There is no wash. There was never any wash intended as far as Miss DeFilippo and Mr. Levinson were concerned, with respect to this matter. It was clear from their standpoint that Dziubek and Nagy would participate.
Dr. Liva's understanding is to the contrary. There is no meeting of the minds.
* * * * * * * *
... I am denying the applications here for relief. As far as I am concerned, there is no settlement. As far I am concerned there is no agreement to enforce. I am leaving the parties in the position and I would note for the record that Counsel has pointed out that there may not be any prejudice.
The trial court obviously troubled by Morell's conduct in making allegedly "incomplete representations, or even false representations," concerning the settlement to the court and counsel as well as to his client, Dr. Liva, assessed counsel fees against Weiner & *436 Shanker as a sanction for Morell's conduct. The trial court explained:
Further what I intend to do as part of what I feel is an appropriate sanction, it's an extraordinary one, but under the circumstances it  it must be done. I am going to ask Counsel for Schumann, for Barnes, and for Mr. Stagnitti as ad pros. and Nagy and Dziubek, to submit certifications with respect to counsel fees that have been incurred as a result of the bringing of the application to enforce the settlement.
It is my intention to have Mr. Weiner and Mr. Shanker comment on that as they wish, but I intend to make an award of reasonable counsel fees, because under the circumstances here I find no fault with what Counsel for Nagy and Dziubek and Schumann and Barnes were doing, and the way in which they participated. And I think it would be patently unfair to heap on to their clients, the cost associated with this matter, because I do not feel that that is appropriate.
Upon submission of affidavits of services, the trial court awarded $2,187.50 to Schumann's attorneys and $10,475 to Stagnitti's, Dziubek's and Nagy's attorneys, against Messrs. Weiner & Shanker. The attorneys' motion for reconsideration was denied, and we granted leave to appeal.
New Jersey accepts the underlying premise of the "American Rule" that ordinarily "sound judicial administration will best be advanced by having each litigant bear his own counsel fee...." Gerhardt v. Continental Ins. Cos., 48 N.J. 291, 301, 225 A.2d 328 (1966); see Coleman v. Fiore Bros., Inc., 113 N.J. 594, 596, 552 A.2d 141 (1989); State, Dept. of Env. Protect. v. Ventron Corp., 94 N.J. 473, 504, 468 A.2d 150 (1983); Right to Choose v. Byrne, 91 N.J. 287, 316, 450 A.2d 925 (1982); see also Alyeska Pipeline Serv. v. Wilderness Soc., 421 U.S. 240, 247, 257, 95 S.Ct. 1612, 1616-17, 1621, 44 L.Ed.2d 141, 147, 153 (1975). "The rule is based upon the high priority accorded free access to the courts and a desire to avoid placing barriers in the way of those desiring judicial redress of wrongs." A.G. Ship Maintenance Corp. v. Lezak, 69 N.Y.2d 1, 511 N.Y.S.2d 216, 218, 503 N.E.2d 681, 683 (1986). Thus, in accordance with this sound and firmly settled policy, unless attorney fees are authorized by statute, court rule, or contract, they cannot be awarded by the court. See Satellite v. Gateway Com. v. Musi Dining Car Co., 110 N.J. 280, 285, 540 A.2d 1267 (1988). We find no reason in this case to deviate from that policy.
*437 We begin our analysis with R. 4:42-9(a), which sets forth the general rule that "[n]o fee for legal services shall be allowed in the taxed costs or otherwise...." This rule modifies the American Rule. The rule sets forth eight exceptions in which attorney fees may be awarded: (1) in a family action; (2) out of a fund in court; (3) in a probate action; (4) in an action for the foreclosure of a mortgage; (5) in an action to foreclose a tax certificate or certificates; (6) in an action on a liability or indemnity policy of insurance; (7) as expressly provided in a court rule; and (8) in all cases where counsel fees are permitted by statute. R. 4:42-9(a)(1)-(8). These exceptions were designed to prevent the abuses of the pre-1948 chancery practice in this state, where excessive counsel fees were awarded to favored members of the bar. Satellite Gateway Com. v. Musi Dining Car Co., supra, 110 N.J. at 285, 540 A.2d 1267; Pressler, Current N.J. Court Rules, Comment 1 on R. 4:42-9 (1994). See also R.R. 3:54-7 (Source Rule for R. 4:42-9). None of the exceptions specifically enumerated apply to support the award of attorney fees in this case.
In addition to R. 4:42-9, there are other rules that authorize the award of attorney fees as sanctions for wrongful litigation conduct. See, e.g., R. 1:10-5 (concerning relief to litigant); R. 2:11-4 (imposing attorney fees as sanction for violation of appellate rules); R. 4:14-8 (dealing with failure of a party to attend deposition or serve deposition subpoena); R. 4:23-1 to 4:23-4 (involving various discovery sanctions); R. 4:37-1(b) (regarding voluntary dismissal); R. 4:46-6 (allowing for sanctions where summary judgment opposed by a factual contention raised in bad faith); 4:52-7 (labor disputes); R. 4:58-2 and 4:58-3 (offer of judgment); R. 5:5-5 (early settlement program); R. 5:14-3 (disputed parentage). See also Pressler, Current N.J. Court Rules, Comment 2 on R. 4:42-9 (1994). As with R. 4:42-9, these rules do not apply to this case and do not confer power or authority upon the trial court to assess attorney fees against Messrs. Weiner & Shanker as a sanction for Morell's conduct.
*438 Moreover, R. 1:4-8, which deals generally with the effect of a signature of an attorney or pro se party on pleadings and motions does not confer the necessary power or authority upon the trial court to award these attorney fees. R. 1:4-8 provides:
The signature of an attorney or party pro se constitutes a certificate by him that he has read the pleading or motion; that to the best of his knowledge, information and belief there is good ground to support it; that it does not contain scandalous or indecent matter; and that it is not interposed for delay. If a pleading or motion is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken and the action may proceed as though the pleading or motion had not been served. For a willful violation of this rule an attorney may be subject to appropriate disciplinary action, and an attorney or a party appearing pro se may be subject to punishment for contempt.
R. 1:4-8, unlike Rule 11 of the Federal Rules of Civil Procedure, does not specifically authorize sanctions against an attorney for violating its provisions. Even assuming Morell's conduct in this case may have constituted a violation of the rule, thus making him subject to appropriate disciplinary action or to punishment for contempt, the rule does not serve as a basis for the assessment of attorney fees against Messrs. Weiner & Shanker as a sanction for Morell's conduct. Rather, the trial court should have referred the matter to the Office of Attorney Ethics or initiated a formal contempt proceeding against Morell under R. 1:10-2. See Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 347, 476 A.2d 250 (1984); Berthelsen v. Hall, 194 N.J. Super. 22, 26-27, 475 A.2d 1275 (App.Div. 1984).
Furthermore, there does not appear to be any statute that confers upon the trial court the power or authority to assess attorney fees as a sanction in the circumstances of this case. New Jersey's so-called "Frivolous Litigation Statute," N.J.S.A. 2A:15-59.1, does not apply. Our Supreme Court has specifically held that the statute does not apply to a motion; it applies only to a complaint, counterclaim, cross-claim or defense. See Lewis v. Lewis, 132 N.J. 541, 545, 626 A.2d 422 (1993). Additionally, the Court has limited the award of attorney fees under that statute to apply only against clients. The statute has been held not to apply *439 to attorneys. McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 558, 560, 626 A.2d 425 (1993).
Thus, absent statutory authority or court rule, the only power or authority for the trial court to award attorney fees by way of a sanction must be found within its inherent powers. It is generally accepted that courts have inherent powers beyond those specifically delegated or confirmed by statute or court rule to do what is reasonably necessary for the orderly and efficient administration of justice within the scope of their jurisdiction. See 20 Am.Jur.2d Courts § 79, at 440-41 (1965); 21 C.J.S. Courts § 14, at 21 (1990). However, we need not decide whether our courts have the inherent power to assess counsel fees as a sanction for an attorney's improper or wrongful conduct. See Bi-Rite Package v. Ninth Jud. Dist. Court, 735 P.2d 709 (Wyo. 1987); A.G. Ship Maintenance Corp. v. Lezak, supra, 511 N.Y.S.2d 216, 503 N.E.2d 681;[1]Bauguess v. Paine, 22 Cal.3d 626, 150 Cal. Rptr. 461, 586 P.2d 942 (1978).[2]But see Eash v. Riggins Trucking, Inc., 757 F.2d 557 (3d Cir.1985); Barnard v. Wassermann, 855 P.2d 243 (Utah 1993); Winters v. City of Oklahoma City, 740 P.2d 724 (Okla. 1987); see also Felix F. Stumpf, Inherent Powers of the Court: Sword and Shield of the Judiciary 24-26 (1994).
Even assuming the existence of such inherent power, it must be exercised with restraint and discretion because of its potency. See Chambers v. NASCO Inc., 501 U.S. 32, 44, 111 S.Ct. *440 2123, 2132, 115 L.Ed.2d 27, 45, reh'g denied, 501 U.S. 1269, 112 S.Ct. 12, 115 L.Ed.2d 1097 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488, 500 (1980). As the Court of Appeals for the Fifth Circuit appropriately emphasized in Reed v. Iowa Marine and Repair Corp., 16 F.3d 82, 84 (5th Cir.1994): "[T]he threshold for the use of inherent power sanctions is high." Consequently, even where the inherent power to award attorney fees as a sanction against an attorney has been found to exist, the imposition of such a sanction is generally not imposed under this power without a finding generally that the attorney's conduct constituted or was tantamount to bad faith. See, e.g., Gillette Foods v. Bayernwald-Fruchteverwertung, 977 F.2d 809, 813-14 (3d Cir.1992); Oliveri v. Thompson, 803 F.2d 1265, 1272-73 (2d Cir.1986), cert. denied, sub nom. Suffolk County v. Graseck, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 918-19 (11th Cir.1982); Hudson Motors v. Crest Leasing, 845 F. Supp. 969, 982 (E.D.N.Y. 1994); Skilcraft Fiberglass, Inc. v. Boeing Co., 72 Wash. App. 40, 863 P.2d 573, 577 (1993). See also Debra T. Landis, Annotation, Inherent Power of Federal District Court to Impose Monetary Sanctions on Counsel in Absence of Contempt of Court, 77 A.L.R.Fed. 789, 801-02 (1986). Cf. McCandless v. Great Atlantic and Pac. Tea Co., Inc., 697 F.2d 198 (7th Cir.1983).
We cannot conclude on this record that either Richard J. Weiner, Esq., or Arthur L. Shanker, Esq., the principals of the Weiner & Shanker law firm, were guilty of bad faith or committed an unprofessional act in the attempted settlement of this matter on behalf of Dr. Liva. At most, their conduct might have constituted negligence in the supervision of Morell. The alleged wrongful conduct or bad faith concerning the proposed settlement was directly attributable to Morell, and it does not appear from this record that either Weiner or Shanker authorized, acquiesced in, or ratified such conduct. Consequently, even assuming that the inherent power resided in the trial court to assess attorney fees, we are satisfied that the trial court improperly exercised that *441 power in this case. Stated simply, the trial court erred in assessing attorney fees against Messrs. Weiner & Shanker as a sanction for Morell's conduct in this case.
Accordingly, the orders assessing attorney fees against Messrs. Weiner & Shanker are reversed.
NOTES
[1] Following the New York Court of Appeals' decision in A.G. Ship Maintenance Corp. v. Lezak, supra, New York Court Rule 130-1.1 was enacted to govern costs and sanctions in civil and criminal proceedings for frivolous conduct as defined by the rule. McKinney's 1993 New York Rules of Court § 130-1.1 (22 NYCRR § 130-1.1).
[2] Following the California Supreme Court's decision in Bauguess v. Paine, supra, the California Legislature amended the Code of Civil Procedure to grant trial judges the statutory power to award attorneys fees to an opposing party for a party or a party's attorney's bad faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. Cal.Civ.Proc.Code § 128.5 (West 1982 & Supp. 1994).