**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0360-22

ANTHONY FESTA, M.D.,
ANTHONY SCILLIA, M.D.,
CRAIG WRIGHT, M.D.,
JOHN CALLAGHAN, M.D.,
and CASEY PIERCE, M.D.,

      Plaintiffs-Appellants,

v.

VINCENT MCINERNEY, M.D.,
NEW JERSEY ORTHOPAEDIC
INSTITUTE LLC, and
NORTHLANDS ORTHOPAEDIC
INSTITUTE LLC,

      Defendants-Respondents.

_____

Submitted January 22, 2024 – Decided April 1, 2024

Before Judges Gilson and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. C-000005-22.

Brach Eichler LLC, attorneys for appellants (Keith J. Roberts, Thomas Kamvosoulis, and Paul J. DeMartino Jr., on the briefs).

Frier & Levitt LLC, attorneys for respondents (Jonathan E. Levitt, Jason N. Silberberg, and Michael Nathan Sheflin, on the brief).

PER CURIAM

This appeal arises out of disputes among six doctors related to the breakup of a medical practice. The issue before us is limited and involves the imposition of a sanction. Plaintiffs appeal from an order sanctioning them and requiring them to pay $67,317.52 in attorneys' fees and costs to defendants. Discerning no abuse of discretion, we affirm.

I.

Plaintiffs are five orthopedic physicians who were previously members of medical practices known as Northlands Orthopaedic Institute LLC (NOI) and New Jersey Orthopaedic Institute, LLC (NJOI). The only other member of NOI and NJOI was defendant Dr. Vincent McInerney.

McInerney had previously founded NJOI. Four of the plaintiffs later became members of NJOI. In October 2019, the members of NJOI contributed the majority of their ownership in that company to NOI and entered into an

2

operating agreement for NOI (the Agreement). Thereafter, the fifth plaintiff, Dr. Casey Pierce, became a member of NOI.[1]

NOI is a company organized under New Jersey's Revised Uniform Limited Liability Company Act, N.J.S.A. 42:2C-1 to -94. The Agreement covers NOI's operation as a medical practice and details the business relationships among the members. It describes how NOI is managed, how members are paid, and how members can voluntarily withdraw from NOI. The Agreement states that it is governed by New Jersey law. It also includes an arbitration clause, which states:

> Except as may be necessary to enforce the provisions of Section 15.15 by temporary injunction, permanent injunction or other equitable relief, any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration in Passaic County, New Jersey, in accordance with the rules then obtaining of the American Health Lawyers Association Alternative Dispute Resolution Service, and judgment upon any award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. The results of the arbitration shall be final and binding on both parties. The fees of the arbitrator shall be borne equally by the parties.

---

[1] Although NOI and NJOI are separate entities and NJOI continues to exist as a subsidiary of NOI, we use NOI to refer to both medical practices collectively except when there is a need to make a distinction.

Section 15.15 of the Agreement is a confidentiality provision stating that "all data and information obtained with respect to" NOI shall remain confidential, except in narrow circumstances, and that a non-breaching member may seek an injunction to prevent a breaching member from disclosing confidential information.

On August 17, 2021, plaintiffs gave McInerney and NOI written notice that they would be leaving NOI. Thereafter, plaintiffs began to plan for and establish a new medical practice named Academy Orthopaedic Group, LLC (Academy). Plaintiffs ended their work for and membership in NOI effective December 31, 2021. Three days later, on January 3, 2022, plaintiffs began to practice at Academy. Academy's office is in the same building, across the hall from NOI's office.

On January 7, 2022, plaintiffs filed a complaint and order to show cause against McInerney, NOI, and NJOI. Plaintiffs alleged that McInerney had put his own interests ahead of plaintiffs' interests in operating NOI and that he had caused them damages. They also alleged that McInerney had not properly compensated them after they announced that they were leaving NOI. In their complaint, plaintiffs alleged six causes of action: (1) tortious interference with plaintiffs' relationships with their patients; (2) breach of fiduciary duty; (3)

breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) an "action to compel buyout of plaintiffs' interests" in NOI and NJOI; and (6) a "demand for accounting."

In their order to show cause, plaintiffs claimed that defendants were withholding information about patients that plaintiffs had treated while at NOI and, as a result, plaintiffs were not able to assist those patients in obtaining future medical care. Plaintiffs sought injunctive relief through a temporary restraining order (TRO), including:

> (a) compelling [d]efendants to turn over all patient information for patients treated by any of the [p]laintiffs so they [could] be contacted immediately, (b) compelling [d]efendants to transfer any of [p]laintiffs' patient records to [p]laintiffs['] new practice upon request, and (c) compelling NJOI/NOI staff to advise any patients inquiring about any of the [p]laintiff [d]octors of [p]laintiffs['] new practice, Academy Orthopaedic Group LLC or transferring all telephone calls to [p]laintiffs' new practice, Academy Orthopaedic Group LLC.

The court held a hearing on plaintiffs' request for temporary injunctive relief on January 12, 2022. At that hearing, plaintiffs' counsel argued that plaintiffs were unable to obtain access to information "to let the patients know where [plaintiffs were] going to be." Plaintiffs requested immediate relief requiring defendants to provide patient information so that plaintiffs could send

A-0360-22

notification letters. Counsel for plaintiffs also stressed that plaintiffs needed the information "in a timely fashion" to "allow for the physicians to continue the care of their patients."

After hearing arguments from counsel, the court granted plaintiffs some of the injunctive relief sought. Balancing the factors under <u>Crowe v. De Gioia</u>, 90 N.J. 126, 132-34 (1982), the court found that plaintiffs were entitled to send patient notification letters to patients they had treated in the past year. The court directed that the letter was to use "neutral language" and that patient contact information was not to be used for advertisements.

On January 14, 2022, the court entered an order memorializing its decision. The order required defendants to show cause why plaintiffs should not receive the temporary injunctive relief they requested, including compelling defendants to turn over patient information for patients treated by any of the plaintiffs, enjoining defendants from withholding patient information, compelling NOI to inform patients inquiring about plaintiffs of plaintiffs' new practice, and compelling production of financial documents and a full accounting of NOI's and NJOI's financial and business transactions.

Three days later, defendants provided plaintiffs with the patient contact information required by the court's order. The parties, however, were not able

6

to come to an agreement on the wording of the patient notification letter. So, the court issued an approved letter on January 19, 2022.

By early February 2022, defendants had learned that plaintiffs had obtained patient data from NOI in December 2021. In that regard, it came to light that on December 8, 2021, while plaintiffs were still working at NOI, 45,000 items of patient information were exported from NOI's electronic medical records system using plaintiff Dr. Anthony Festa's credentials. That data contained patient contact information for patients who had not been treated at NOI or NJOI for several years, as well as patients who had been treated exclusively by McInerney.

It also came to light that in mid-December 2021, the practice manager for plaintiffs' new practice contacted a print shop about sending out letters to notify patients that plaintiffs would be leaving NOI and starting a new practice on January 1, 2022. Plaintiffs then drafted a patient notification letter and, on January 12, 2022, the same day that plaintiffs were in court seeking injunctive relief, plaintiffs caused notification letters to be mailed to 25,000 patients.

On February 3, 2022, defendants filed a cross-motion for a TRO seeking to enjoin plaintiffs from "sending any further communications that [were] non-conforming with the [c]ourt[-]approved letter." Defendants also asked the court

A-0360-22

to approve a draft corrective letter to be sent to patients to clarify the information in plaintiffs' notification letter.

On February 8, 2022, the court granted defendants temporary relief, ordering plaintiffs to take certain corrective actions concerning the patient notifications and to provide certifications on how they had obtained the patient information in 2021. The court also instructed the parties to agree on a neutral "corrective letter" to be sent out to patients.

Thereafter, defendants moved to sanction plaintiffs for failing to disclose that they had already obtained patient data at the time that they filed their complaint and order to show cause and that they sent out patient notification letters on January 12, 2022, the same day that they were in court seeking injunctive relief.

The court heard oral argument on that motion on March 17, 2022. That same day, the court made findings of fact on the record and determined that it would impose a sanction by awarding defendants attorneys' fees. The court found that it had been "misl[ed]" by plaintiffs' omission of the information that they had patient data and that they were sending out patient notification letters while they were requesting temporary relief, including compelling patient data from defendants.

A-0360-22

Addressing the appropriate remedy, the court reasoned that it had the inherent power to impose a sanction. The court declined to dismiss plaintiffs' complaint. Instead, the court determined that the appropriate sanction would be awarding defendants attorneys' fees and costs. The court did not enter an order at that time. Instead, the court permitted defendants to submit a fee application and allowed plaintiffs to respond to that application.

Meanwhile, defendants had also moved to compel arbitration. On May 5, 2022, the court granted that motion, compelled arbitration, and dismissed plaintiffs' complaint. Plaintiffs have not appealed from the order compelling arbitration. Instead, the parties moved forward with the arbitration, but we have not been advised of whether the arbitration is still pending or whether it has concluded.[2]

Thereafter, on September 14, 2022, the court issued an order on the sanction. After reviewing the papers submitted in support of and in opposition

---

[2] The New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36, which governs the Agreement, directs that when a court compels arbitration, it should stay the legal action pending the arbitration. N.J.S.A. 2A:23B-7(g); see also GMAC v. Pittella, 205 N.J. 572, 583 n.7 (2011) (explaining that, unless the claims are severable, N.J.S.A. 2A:23B-7(g) "only enable[s] [a] trial court to 'stay' the claims"). No party, however, has appealed from the order compelling arbitration and dismissing the action. Accordingly, that order is not before us, and we do not modify that order.

9

to the fees and costs application, the court directed plaintiffs to pay defendants' attorneys' fees in the amount of $60,017.50. The court also ordered plaintiffs to pay defendants' costs related to the corrective letters that had to be sent to patients in the amount of $7,300.02. The court supported that order with a written statement of reasons.

Plaintiffs now appeal from the September 14, 2022 order requiring them to pay $67,317.52 in attorneys' fees and costs as a sanction.

## II.

On appeal, plaintiffs make three main arguments. First, they contend that the trial court failed to consider the context of plaintiffs' actions, arguing that defendants' obstruction of their ability to contact their patients undercut defendants' request for sanctions. Second, plaintiffs assert that the trial court abused its discretion in awarding a sanction without analyzing whether the sanction was appropriate under the Frivolous Litigation Statute (the FL Statute), N.J.S.A. 2A:15-59.1, or Rule 1:4-8. Finally, plaintiffs argue that even if a sanction was appropriate, the trial court abused its discretion because the fees allowed were excessive.

We review the trial court's imposition of sanctions under an abuse of discretion standard. See Kornbleuth v. Westover, 241 N.J. 289, 300-01 (2020).

An abuse of discretion arises when a decision is "made without a rational explanation, inexplicitly depart[s] from established policies, or rest[s] on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

We likewise review an award of attorneys' fees for an abuse of discretion. Empower Our Neighborhoods v. Guadagno, 453 N.J. Super. 565, 579 (App. Div. 2018); Shore Orthopaedic Grp., LLC v. Equitable Life Assurance Soc'y of the U.S., 397 N.J. Super. 614, 623 (App. Div. 2008). "[F]ee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Empower Our Neighborhoods, 453 N.J. Super. at 579 (alteration in original) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

A.    The Imposition of the Sanction.

Courts have the inherent power to sanction parties for behavior that is vexatious, burdensome, or harassing. See Brundage v. Est. of Carambio, 195 N.J. 575, 610 (2008) (recognizing the inherent power of courts to sanction parties as a means of enforcing proper practices); Triffin v. Automatic Data Processing, Inc., 394 N.J. Super. 237, 252 (App. Div. 2007) (explaining that a

court has the inherent power to sanction a party that has "acted in bad faith, vexatiously, wantonly or for oppressive reasons" (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991))); Dziubek v. Schumann, 275 N.J. Super. 428, 439-40 (App. Div. 1994) (reasoning a court's inherent power may include awarding attorneys' fees as a sanction).

A court's inherent authority to impose sanctions is "[s]eparate and distinct from court rules and statutes." Triffin, 394 N.J. Super. at 251. Therefore, a court need not rely on the FL Statute or Rule 1:4-8. Nevertheless, in exercising that inherent power, courts should act with "restraint and discretion" because of the "potency" of sanctions. Dziubek, 275 N.J. Super. at 439. A sanction is generally not imposed without a finding that the "conduct constituted or was tantamount to bad faith." Id. at 440.

We discern no abuse of discretion in the trial court's decision to sanction plaintiffs. The court carefully considered the essentially undisputed facts. Plaintiffs filed their complaint and moved for an order to show cause contending that they needed immediate and emergent relief so that they could obtain patient information and notify their patients that they were leaving one medical practice and starting another. What the trial court later found vexatious was that plaintiffs did not disclose that they already had a significant amount of patient

12

data and that they had prepared and were in the process of mailing notification letters to 25,000 patients. In that regard, the record establishes that on December 8, 2021, plaintiffs exported 45,000 items of patient information from NOI. Just over a week later, plaintiffs' new manager was negotiating with a print shop to print and send patient notification letters on behalf of plaintiffs. Then, on January 12, 2022, the same day that plaintiffs were in court seeking their order to show cause, they caused 25,000 patient notification letters to be sent out.

The trial court determined that plaintiffs had failed to be candid and had effectively misled the court by failing to inform it that they already had substantial patient data and were sending out notices. The trial court also faulted plaintiffs for thereafter failing to notify the court while the court prepared a "neutral" notification letter. Moreover, the trial court was vexed by the fact that the notification letter sent out by plaintiffs was materially different from the notification letter prepared by the court.

Those facts support the trial court's decision to sanction plaintiffs. Significantly, the court did not impose the sanction of dismissing plaintiffs' complaint as requested by defendants. Instead, the court used a more measured sanction and awarded attorneys' fees and costs related to the time and costs defendants spent opposing plaintiffs' request for injunctive relief.

13

We discern no reversible error in the trial court's reliance on its inherent authority. Therefore, we reject plaintiffs' argument that the trial court needed to analyze the FL Statute or Rule 1:4-8. While both that statute and rule allow for an award of attorneys' fees, neither the statute nor the rule states that attorneys' fees cannot be awarded in other ways.

We also reject plaintiffs' argument that the trial court erred in not considering the overall context. Plaintiffs assert that McInerney was acting in bad faith and with unclean hands. While the trial court certainly could have considered defendants' actions, it was not an abuse of discretion not to evaluate all the equities of the parties' disputes because there were sufficient facts supporting the court's determination to sanction plaintiffs and the remainder of the matter had been sent to arbitration.

B. The Award of Attorneys' Fees and Costs as a Sanction.

As already noted, in imposing a sanction, a trial court may award attorneys' fees. See Segal v. Lynch, 211 N.J. 230, 255 (2012) (noting that attorneys' fees may be awarded based on the inherent power to sanction); Dziubek, 275 N.J. Super. at 439 (discussing a court's "inherent power to assess counsel fees as a sanction"). Plaintiffs make three arguments concerning the award. They contend that (1) the hourly rates of defendants' lawyers were

unreasonably high; (2) the trial court failed to exclude "ineffective, redundant or duplicative use of time;" and (3) the trial court "failed to consider the proportionality between . . . defendants' fees and alleged damages."  Those arguments are not supported by the record.

"The starting point in awarding attorneys' fees is the determination of the 'lodestar,' which equals the 'number of hours reasonably expended multiplied by a reasonable hourly rate.'"  Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004) (quoting Rendine, 141 N.J. at 335).  A court must first determine whether the hourly rates are reasonable, which involves "assess[ing] the experience and skill of the prevailing party's attorneys and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Rendine, 141 N.J. at 337 (quoting Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)).  "[T]he trial court should satisfy itself that the assigned hourly rates are fair, realistic, and accurate, or should make appropriate adjustments."  Ibid.  In making this inquiry, the court should consider the factors laid out in RPC 1.5(a):

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) whether the fee is fixed or contingent.

In calculating the number of hours to be used in determining the lodestar, a court "must not include excessive and unnecessary hours spent on the case." Furst, 182 N.J. at 22. A court has discretion to exclude certain hours from the calculation "if the specific circumstances incidental to a counsel-fee application demonstrate that the hours expended, taking into account the damages prospectively recoverable, the interests to be vindicated, and the underlying statutory objectives, exceed those that competent counsel reasonably would have expended to achieve a comparable result." Rendine, 141 N.J. at 336.

Here, the trial court did not abuse its discretion in calculating attorneys' fees. It based its determination on the lodestar and considered in detail both the hourly rates of defendants' attorneys and the number of hours expended on the case. In that regard, the court considered each attorney's hourly rate, experience, and expertise in determining whether that attorney's rate was reasonable, as well

16

as the complex nature of the case and the significant time pressure involved in opposing plaintiffs' application for a TRO.

The court made significant reductions to the hours requested by defendants, excluding time involved in addressing matters other than the TRO and patient notification letters. The court ultimately adjusted the amount down from defendants' requested $95,142.50 to $60,017.50. In making that award, the court examined each item on defendants' summary of hours spent on the case and made downward adjustments or eliminated certain time. In short, the trial court engaged in the appropriate analysis, and the fees and costs award was reasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0360-22