**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1380-22

IN THE MATTER OF THE
ESTATE OF TYRONE MAY, SR.,
deceased.

_____

Argued October 8, 2024 – Decided January 28, 2025

Before Judges Firko and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Camden County, Docket No. P-000097-20.

Lawrence Alan Katz argued the cause for appellant/cross-respondent Hazel May (Lento Law Group, attorneys; Lawrence Alan Katz, of counsel and on the brief).

Patricia A. Darden argued the cause for Teresa May respondent/cross-appellant.

PER CURIAM

Hazel May, the mother of decedent Tyrone May, Sr., appeals from a November 2, 2022 Chancery Division Probate order, awarding counsel fees and

sanctions against Hazel[1] and her attorneys, the Lento Law Group (Lento Law). Teresa May, who is Hazel's daughter-in-law, also cross-appeals from the April 29, 2022 order, holding Hazel as the beneficiary of two life insurance policies and denying Teresa her motion to stay disbursements of the insurance proceeds. Having considered the record and the applicable governing principles, we affirm both orders.

## I.

We glean from the record that Teresa and Tyrone met in 2004 when he managed her father's funeral arrangements. They lived together and were married in 2006. Relevant to this appeal, Tyrone purchased two life insurance policies naming Teresa as beneficiary: a MONY Incentive Life Legacy variable life policy (MONY Life Legacy) with a $250,000.00 initial face amount and valued at $545,181.82 at the time of his death, and an AXA Equitable Term 20 policy (AXA Equitable Term 20), with a $350,000.00 death benefit.[2]

---

[1] We refer to the parties and family members by their first names for the purposes of clarity because they share a common surname. In doing so, we intend no disrespect.

[2] The Life Legacy policy was issued by Mony Life Insurance Company of America and the Term 20 policy was issued by AXA Equitable Life Insurance Company. Both policies were distributed by AXA Advisors, LLC.

A-1380-22

On February 22, 2011, Tyrone signed an AXA Equitable change of beneficiary form for both the Life Legacy and Term 20 policies in the presence of May Funeral Homes insurance adjuster, David S. Pozzi, designating Hazel as the new beneficiary under the policies. Two days later, Pozzi then faxed that signed form to the insurance company with the subject referencing only the AXA Equitable Term 20 policy. In a March 2, 2011 letter to Tyrone, AXA Equitable certified the change in beneficiary designation to Hazel and that the proceeds would be paid in a single sum.

In February 2019, Teresa filed for divorce,[3] but Tyrone refused to file a responsive pleading because he wanted to reconcile. Tyrone was a general partner and oversaw six funeral homes that comprised his parents' business, May Funeral Homes, at the time of his death in April 2020. The divorce complaint was subsequently dismissed. He was survived by his parents, Teresa, and three adult children: Jasmyne, Tyrone, Jr., and Tiffany.

Thereafter, on April 22, 2020, Hazel filed a complaint in the Probate Part, seeking appointment as the administrator of Tyrone's estate. In response, Teresa filed a cross-motion also seeking appointment as estate administrator.

---

[3] Docket No. FM-04-1082-19.

A-1380-22

In July 2020, Lento Law submitted a limited power of attorney, on behalf of Hazel, to Equitable concerning the death claim for both policies. On July 22, 2020, Hazel and Lento Law endorsed a check for $350,025.60 and six days later endorsed the Life Legacy benefits check for $545,181.82. On August 14, 2020, the court granted Hazel's application, appointed her temporary administrator of Tyrone's estate, and directed to provide an informal accounting of the estate within forty-five days.

With the assistance of Lento Law, on September 15, 2020, Hazel deposited $884,270.63 into "TMFT, Inc.," a trust account allegedly established for her and Tyrone's children's benefit. Hazel was listed as the account holder with a Wyoming address.

Also, on September 15, Teresa served written discovery demands on Hazel. Specifically, interrogatory number 37 asked: "What insurance policies of any kind did Tyrone May, Sr. have? Please list name of company, contact information, and policy number." Correspondingly, number 38 of the notice to produce requested: "Copies of any and all policies of insurance on the Decedent's life in effect at the time of the Decedent's death."

A-1380-22

As of October 23, 2020, Hazel failed to comply with the court's order and provided a deficient accounting, and two weeks later Hazel again provided a second deficient accounting.

Unbeknown to Teresa and the court, the EIN number[4] for the estate with Hazel as executor was issued on November 12, 2020. Thereafter, on November 20, 2020, the court removed Hazel as temporary administrator and appointed Maisie Chin Smith as temporary administrator for the estate.

In Hazel's December 4, 2020 certified answers to interrogatories, she stated: "Decedent had health insurance at the time of his death." Decedent did not have a life insurance policy at the time of his death. In response to the document request, Hazel stated: "[p]laintiff is not in possession of any documents responsive to this [r]equest. As with all other responses, [p]laintiff reserves the right to amend this [r]esponse should she discover documentation responsive to this [r]equest."

---

[4] An employer identification number (EIN) is a nine-digit number assigned by the Internal Revenue Service for a decedent's estate. Internal Revenue Service, www.irs.gov/businesses/small-businesses-self-employed/information-for-executors (last visited Jan. 17, 2025).

A-1380-22

Those discovery responses initiated protracted and contentious discovery hearings regarding Tyrone's estate assets and death benefits that spanned two years. From November 2020 through April 2021, Teresa's counsel and the court-appointed administrator were unable to obtain information regarding Tyrone's assets, the EIN number, and death benefits.

The court initially addressed the insurance checks deposited in the Wyoming account at three hearings held in April 2021. During the first hearing on April 5, Hazel told the court she received benefits from Tyrone's "personal policy" worth "over $800[,000.00]" and distributed some of the money to Tyrone's children. When questioned further by the court, Hazel said she wrote checks to the adult children if they "wanted something." Also, at the April 5 hearing, Hazel's counsel, John A. Fonte, admitted that the EIN was an "outstanding issue" concerning the administration of the estate.

Following that hearing, in the April 7, 2021 order, the court directed: (1) May Funeral Home insurance adjuster Pozzi to produce the insurance documents to both Teresa's counsel and the court-appointed administrator, and (2) Lento Law to produce a sworn statement concerning its efforts to obtain an EIN, bank account statements and copies of the checks drawn on the account where the

6

insurance proceeds were deposited. Lastly, the order provided for no further disbursements from the account.

In an April 12, 2021 certification, Fonte stated that he was told by Hazel and May Funeral Homes manager Toni May-Jervey that "they did nothing to anything to obtain an EIN." Further, it was "their understanding that [Lento Law] had performed the work." Fonte then contacted his paralegal Denise Stone and supervisor John Groff regarding the firm's efforts, and both stated "they 'believed' they had taken care of that" and would get back to him with the "relevant information." Fonte stated that "between February 26 and March 2, 2021 . . . no EIN was taken out for the [estate], no accounts were opened in the name of the estate."

At the next hearing on April 15, Hazel confirmed that she gave one child $30,000.00, a second child $10,000.00, and a third child $136,000.00. The court-appointed administrator confirmed she received bank statements for the Wyoming account but not copies of the checks. Moreover, she was concerned that the Wyoming account was opened in the name of TMFT and Hazel May.

In the April 16 order, the court redirected Pozzi to produce the insurance documents because he received Hazel's consent to fully cooperate with the court and the court-appointed administrator. The court also directed Lento Law to

clarify the firm's role in establishing the Wyoming bank account. Hazel was directed to immediately produce copies of the front and back of all checks drawn on the bank account that held the deposited insurance proceeds.

Fonte submitted a second certification dated April 18, 2021, stating that he was told by Groff an EIN was obtained in Hazel's individual name to establish the Wyoming trust. Fonte further stated that he lacked personal knowledge regarding the establishment of the trust.

At the third hearing on April 19, additional questions arose concerning the Wyoming bank account, the trust documents, and EIN number. In an April 2021 order, the court directed Joseph Lento, Esq. to provide a certification concerning the firm's efforts to obtain an EIN and establish the Wyoming trust. Hazel was directed to turnover the balance of the funds in the Wyoming account to the court-appointed administrator by April 19, 2021.

In compliance with the court's order, in an April 21, 2021 certification, Joseph Lento stated that he directed and approved the "establishment of a Wyoming domiciled corporate entity 'TMFT, Inc.,'" an irrevocable asset protection, setup to "protect [Hazel's] assets as the beneficiary of life insurance policies." Lento also admitted the firm obtained the EIN for the estate "as part of [p]laintiff's status as [the] then-temporary administrator of the [e]state."

Lastly, Lento stated neither he nor Lento Law were affiliated with or a member of the Wyoming trust.

Even with co-counsel's entry in the case in May 2021, Hazel continued to obfuscate assets and insurance policy documents from April 18, 2021 through October 28, 2022. Numerous hearings and orders were issued directing Pozzi to provide Teresa's counsel and the court-appointed administrator with both life insurance policy documents.[5] The court, ultimately, sanctioned Hazel for discovery violations prior to June 2021 and ordered her to pay counsel fees to both Teresa's counsel and the court-appointed administrator. Those sanctions and orders are not on appeal.

Hazel moved for summary judgment, seeking a declaration that the insurance benefits from both the MONY Life Legacy and the AXA Equitable Term 20 policies were non-probate assets, among other items. Teresa opposed and cross-moved for summary judgment, asserting she was the lawful beneficiary of the MONY Life Legacy policy and other items.

---

[5] The record on appeal contains only a one-page summary for the Life Legacy and the Term 20 policies. We discern from our review of the record that the complete policy documents were never produced during discovery.

A-1380-22

Following oral argument, on July 30, 2021, in an oral opinion, the trial court granted summary judgment in favor of Hazel for the AXA Equitable Term 20 Policy.[6] The court reasoned that it was undisputed that Tyrone changed the beneficiary to Hazel based on the 2011 change of beneficiary form, the letter from the insurance company accepting the form, and the issuance of the proceeds. Accordingly, the court concluded Hazel was the beneficiary of the AXA Equitable Term 20 policy and directed those insurance benefits remain in the court-appointed administrator's trust account until the MONY Life Legacy benefits were resolved.

As to the MONY Life Legacy benefits, the court determined a plenary hearing was necessary to resolve the disbursement of the $250,000 death benefit to the lawful beneficiary. Thus, in a separate order, the court denied Teresa's cross-motion regarding the Life Legacy policy. The court-appointed administrator continued attempts to obtain the missing document regarding the Life Legacy policy from Hazel's co-counsel, Pozzi, and Equitable.

---

[6] A copy of the order for the July 30, 2021 hearing was not included within the appendix. We discern the court's ruling from the transcript.

In a February 16, 2022 response to a letter from co-counsel, Equitable confirmed that Hazel was listed as the beneficiary for the MONY Life Legacy policy. The letter provided:

> This policy was owned by Tyrone May, who was the sole owner and the insured. The policy owner has the right to change a revocable beneficiary at any time without notifying or getting permission from the current beneficiary. As a practice, the Equitable Financial Insurance will restrict a beneficiary change on a policy if served with a court order that provides directive and explicitly state any obligation, or lack of obligation, to carry a life insurance policy to benefit the ex-spouse as a result of a divorce. Equitable Financial never received any such directive.

In the April 6, 2022 order, co-counsel was directed to produce the change of beneficiary form for the MONY Life Legacy policy and Pozzi for a hearing scheduled for April 20, 2022.

On April 20 and April 28, 2022, a two-day hearing was held and consisted of only one witness, Pozzi, who testified on behalf of Hazel. Pozzi testified Tyrone requested a change of beneficiary form for both policies in 2011. As to the change of beneficiary form, Pozzi completed the form in Tyrone's presence, Tyrone signed the form, and faxed the form to the insurance company a couple of days later. He explained that it was company policy to complete one form if the same owner was changing to the same beneficiary on more than one policy.

A-1380-22

At the outset, the court noted the "complete non-compliance" by Hazel and non-responsiveness from Pozzi and the insurance company. In an oral ruling rendered on April 28, 2022 at the conclusion of the hearing, the court determined that the insurance proceeds from both the MONY Living Legacy and AXA Equitable Term 20 policies held in the court-appointed administrator's account were non-probate assets.

The court reasoned there was no dispute concerning the lawful beneficiary of the AXA Equitable Term 20 policy based on the February 16, 2022 letter from Equitable and the change of beneficiary form because it was unrebutted. The court further reasoned the "confusion" arose from the change of beneficiary form used for both policies instead of a separate form for each policy. The court also concluded "the owner/decedent properly executed a change of beneficiary form that was acceptable to the life insurance company and proceeds are payable to his mother, Hazel."

The order directed the release of the $600,000.00 insurance proceeds for both policies from the court-appointed administrator's trust account to Hazel. Anticipating a fee award and perhaps sanctions, the court further directed that $67,986.86 remain in the trust account until Teresa's counsel made an application for counsel fees and sanctions to be paid by Hazel from this fund.

Thereafter, Hazel moved for the release of $69,965.00 from Tyrone's estate account, which was denied. Teresa cross-moved seeking $125,716.00 in attorney fees and costs for services rendered from June 29, 2021 to October 20, 2022, and sanctions.

Following a hearing on both motions, in an oral opinion rendered on October 28, 2022, the court denied Hazel's motion and granted Teresa's cross-motion for attorney fees from June 29, 2021 through November 2, 2022. The court concluded Teresa was entitled to an award of $44,000.00 for 111 hours of time expended since June 2021. The court reasoned counsel's billing was "excessive" — $34,700.00 for 86.75 hours billed for the opposition to Hazel's motion and the preparation for the cross-motion for attorney fees and sanctions was "way out of bounds" because of the "significant motions" filed and on the basis the "information was readily available" to counsel.

The court also imposed $20,000.00 in sanctions against Hazel, finding her actions were "intentional, willful, and malicious." Also, Hazel's "inability to provide information that was read[ily] available was done solely for the purpose to deceive the [c]ourt, to deceive Teresa[,] and to retain much of the money for herself as possible to the detriment of everyone else." The court amplified its reasoning, stating that (1) Hazel was removed as administrator because she "lied

13

[at] every single turn of the way from the onset of this matter," (2) Hazel's "intentional" actions were to "make sure no one else receives any of the money" by withholding the EIN number, hiding the money, assets, information about the 401K, the life insurance benefits, and created bank accounts in Wyoming "thinking the court could not access them." The court concluded that "[e]verything that was done in [the] case was done to be painful." A memorializing order was entered on November 2, 2022. This appeal follows.

II.

A.  Hazel's Appeal on Attorney Fees and Sanctions.

We first address Hazel's claims on appeal that the trial court erred in awarding counsel fees and costs because Teresa engaged in "frivolous discovery" concerning the May Funeral Homes and the life insurance policies. She first argues the $44,000.00 award was unreasonable and an abuse of discretion because Tyrone had no ownership interest in his parents' business and the life insurance proceeds were a non-probate asset.

We review an award of attorneys' fees for an abuse of discretion. Empower Our Neighborhoods v. Guadagno, 453 N.J. Super. 565, 579 (App. Div. 2018); Shore Orthopaedic Grp., LLC v. Equitable Life Assurance Soc'y of the U.S., 397 N.J. Super. 614, 623 (App. Div. 2008). "[F]ee determinations by trial

courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Empower Our Neighborhoods, 453 N.J. Super. at 579 (alteration in original) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443-44 (2001)).

The decision to award attorney's fees rests within the sound discretion of the trial court. See Maudsley v. State, 357 N.J. Super. 560, 590 (App. Div. 2003). In awarding fees, the court has "broad discretion," but not "unbridled discretion." In re Clark, 212 N.J. Super. 408, 416 (Ch. Div. 1986). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). Substantial deference is accorded a trial court's fee award in a probate action. See In re Prob. of Alleged Will of Hughes, 244 N.J. Super. 322, 328 (App. Div. 1990).

It is well established that New Jersey courts adhere to the American rule that litigants bear their own fees unless otherwise provided by court rule, statue, or contract. Henderson v. Camden Cnty. Mun. Util. Auth., 176 N.J. 554, 564 (2003); see In re Niles Trust, 176 N.J. 282, 294 (2003); However, the recovery

of counsel fees and costs associated with probate actions, is one exception to that rule. In re Farnkopf, 363 N.J. Super. 382, 395 (App. Div. 2003).

Rule 4:42-9(a)(3) permits the court to award counsel fees in probate actions to be paid out of the estate if the "contestant had reasonable cause for contesting the validity of the will or codicil, the court may make an allowance to the proponent and the contestant[.]" "To satisfy the rule's 'reasonable cause' requirement, those petitioning for an award of counsel fees must provide the court with 'a factual background reasonably justifying the inquiry as to the testamentary sufficiency of the instrument by the legal process.'" In re Probate of Will and Codicil of Macool, 416 N.J. Super. 298, 313 (App. Div. 2010) (quoting In re Caruso, 18 N.J. 26, 35 (1955)).

Here, the court considered counsel's certification and concluded the $400.00 hourly rate was reasonable. See Rendine v. Pantzer, 141 N.J. 292, 317 (1995). After reviewing the parties' submissions and all the transcripts, the court concluded counsel was "entitled to an award of attorney fees." We agree given the tortuous procedural history.

We, however, reject Teresa's argument the trial court erred in reducing the attorney fees. As part of the analysis, the court found the certification of services "excessive" because there were "significant motions" filed and that the

16

"information was readily available." On this record, we discern no abuse of the court's discretion in excluding and thereby reducing counsel's fees and we are satisfied the court properly exercised its discretion in determining counsel's time and tasks were excessive given the significant motion practice. See Rendine, 141 N.J. at 334-35. The trial court's findings are supported by evidence in the record, and we decline to disturb the counsel fee award.

We next address Hazel's argument the additional $20,000 awarded against Hazel and the Lento Law Group as sanctions was likewise unreasonable, an abuse of discretion, and duplicative. This argument is likewise rejected.

We also review the trial court's imposition of sanctions under an abuse of discretion standard. See Kornbleuth v. Westover, 241 N.J. 289, 300-01 (2020). A trial court has the inherent authority, independent of Rule 1:4-8, to award attorney's fees for unreasonable litigation conduct. See, e.g., Triffin v. Automatic Data Processing, Inc., 394 N.J. Super. 237, 251 (App. Div. 2007). However, "it must be exercised with restraint and discretion because of its potency." Dziubek v. Schumann, 275 N.J. Super. 428, 439. "[T]he imposition of such a sanction is generally not imposed under this power without a finding generally that the . . . conduct constituted or was tantamount to bad faith." Id. at 440.

The court noted Hazel's "intentional, willful, and malicious" conduct in withholding documents from the court, counsel, and the court-appointed administrator from the inception of this matter. The trial correctly found that Hazel's failure to provide or disclose the EIN number, documents related to the Wyoming trust, and the insurance proceeds was done with the intention to deceive the court and Teresa and keep the funds for herself. These material facts were not disputed by Hazel or Lento Law. The court did not abuse its discretion. Accordingly, we affirm the court's award of sanctions.

B.  <u>Teresa's Cross-Appeal Regarding the Life Legacy Insurance Policy.</u>

Lastly, we address Teresa's argument that the court erred in finding Hazel was the lawful beneficiary of the MONY Life Legacy policy. The court's ruling is supported by ample credible evidence in the record establishing Tyrone's change in beneficiary and Equitable's acceptance and confirmation of Hazel as the then-newly designated beneficiary. Teresa has not made the required showing that she was the lawful beneficiary. Thus, we find no abuse of discretion by the court.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-1380-22